**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BONITA M. BROWN : | |
| 2002 Amberleaf Place #16 : | |
| Waldorf, Maryland 20602 : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action:._____ |
| : | |
| GEORGETOWN UNIVERSITY HOSPITAL : | |
| MEDSTAR HEALTH : | |
| 3800 Reservoir Road NW : | |
| Washington, DC  20007 : | |
| : | |
| SERVE ON : | |
| CT Corporation System : | |
| 1015 15th Street, N.W. Suite 100 : | |
| Washington, D.C. 20005 : | |
| : | |
| Defendants. : | |

_____

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**
**AND EQUITABLE RELIEF**

COMES NOW Plaintiff, Bonita Brown, by and through undersigned counsel, and files this complaint for damages against Med Star Health., for alleged violations of Title VII of the Civil Rights Act of 1964 as amended.

**JURISDICTION AND VENUE**

1.  Jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 2000(e) et seq., the Civil Rights Act of 1964, as amended and 28 U.S.C. §§ 1331, 1337, and 1343.  Venue is proper as the employment practices at issue were committed within the jurisdiction of the District of Columbia.

1

2. Plaintiff, Bonita M. Brown, ("Brown"), brings this action for discrimination and to recover unpaid wages: to wit; discrimination based on race (African American), as it relates to her termination of employment.

## PARTIES

3. At all relevant times to this action, Plaintiff Bonita M. Brown was employed by Med Star Health. Plaintiff timely filed a complaint with the Equal Employment Office Commission/Jackson Area Office alleging discrimination based on race and retaliation. The Defendant has received a right to sue letter from the EEOC.

4. Defendant, Med Star Health is a defendant in this action because it was the former employer of the Plaintiff and it controls and operates business in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

5. Plaintiff started working for Med Star Health on or around March 25, 2003 as a Clinical Technician.

6. Plaintiff has been employed with Med Star Health for an approximately 4 years.

7. Due to her exemplary job performance Plaintiff Brown was nominated for Technician of the Year in May of 2004, in which Mrs. Humphrey requested Mrs. Shawnee Thomas to give her the award, which Plaintiff didn't receive until the end of October.

8. On several occasions, Mrs. Humphrey the Unit Manager performed duties in an unprofessional manner by mixing personal issues with business.

9. In January 2005, Mrs. Humphrey was conducting meetings with all employees except the Plaintiff.

10. On or about May 5, 2005, Mrs. Humphrey submitted another letter informing Plaintiff that her schedule would change as of June 14, 2005. Since Plaintiff has been employed with Defendant her hours has always been from 5:30 pm until 6:00 am. Plaintiff's schedule had been like that because of daycare.

11. Plaintiff Brown and Mrs. Humphrey had a telephone discussion about the schedule change in which Mrs. Humphrey schedule was also adjusted due to daycare.

12. On numerous occasions Mrs. Humphrey has been bringing her children to work due to daycare issues.

13. Mrs. Humphrey accommodated another similarly situated (Caucasian) Clinical Tech's schedule because of daycare issues, from 7:00 am till 3:30 pm to 5:00 am to 1:00 pm effective June 1, 2005. Mrs. Humphrey told Plaintiff that she could not keep the same schedule hours, which were 5:30 pm until 6:00 am because she was not doing any more favors.

14. On May 25, 2005 there was a staff meeting held and Mrs. Humphrey listened to all the nurses give their concerns about other staff members and repeatedly responded, "It's a culture thing."

15. After being discharged from the ER, a nurse came to C-41 requesting to occupy a bed without permission from the Charge Nurse and/or the Clinical Coordinator. Once in the room (C4113), the nurse (Caucasian) began acting out with disruptive behavior and no disciplinary action was taken against the nurse.

3

16. Due to a nurse's neglect to check a patients I.D. band, the patient was sent into the Operation room, when he should have went to the X-Ray department. No disciplinary action was taken in this instance either.

17. Plaintiff was not properly informed about a write-up that Mrs. Humphrey had in her possession for a week. Plaintiff was then pulled into an unexpected meeting on February 24, 2005 at 2:10 a.m. with Mrs. Humphrey about the write-up.

18. On February 24, 2005 at 1:10 p.m., Mrs. Humphrey called Plaintiff home and asked for her address informing her that she was updating her personnel files. Later that day, Mrs. Humphrey, made several phone calls asking Plaintiff if she had received anything from Fed-ex.

19. On May 26, 2005, Plaintiff was sent home on suspension for one day without paper work. Plaintiff was told by Shawnee' Thomas and the Clinical "to return on her next scheduled day to work, and that Mrs. Humphrey would notify her the next business day or no later than 12:00 p.m. on Tuesday, because it was holiday weekend.

20. On May 31, 2005 at 3:14 p.m two hours before her shift started, Mrs. Humphrey called Plaintiff on her cell phone and told her not to come to work, stay home, and come back tomorrow. Then Mrs. Humphrey changed her statement and said not to come to work because Plaintiff was being "investigated" without giving a reason and hung up the telephone.

21. On June 1, 2005, an envelope was stuck in Plaintiff's door with Mrs. Humphrey's handwriting on it and with a letter from Mrs. Humphrey, in reference to my suspension from May 26, 2005 until June 6, 2005, not knowing who delivered it.

4

22.    On August 1, 2005, another envelope was stuck in Plaintiff's door, with a letter about a meeting to be held with Mrs. Humphrey, Plaintiff's Union Representative and Plaintiff on August 3, 2005.  A second copy was placed in Plaintiff's unit mailbox.

23.    On August 4, 2005 Plaintiff received a written warning from Mrs. Humphrey by Fed-Express, a second one from Oriental Express and a third copy came regular mail, a fourth copy came by second Fed-Ex and fifth copy was placed in Plaintiff's mailbox on the unit.

24.    On August 17, 2005 at 9:30 pm Mrs. Humphrey had Plaintiff escorted off of Georgetown University Hospital premises, without any explanation or paperwork.

25.    On August 18, 2005, Plaintiff was admitted to Southern Maryland Hospital for suffering from Angina.  Mrs. Humphrey called Plaintiff's cell phone at 10:15 am. leaving a message that Plaintiff was removed from the schedule, and Fed Ex will be delivering the letter later in the day.

26.    On August 19, 2005 Fed-Ex and Oriental Express attempted to make a delivery of the letter from Mrs. Humphrey, leaving reminders on Plaintiff's door.

27.    On August 22, 2005, after being discharged from Southern Maryland Hospital around 9:15 p.m., Plaintiff discovered more reminders from Fed-Ex.

28.    On August 23, 2005, Fed-ex arrived at Plaintiff's door once again delivering the letter Mrs. Humphrey had telephoned Plaintiff about why she was hospitalized.  The letter stated that Plaintiff was being removed from the schedule until further reviewed by Employee and Labor Relations.

29. On August 27, 2005 once again after arriving home early evening Plaintiff discovered a duplicate letter from Michelle Humphrey about her being removed from the schedule, again not knowing who delivered it.

## COUNT I
## DISCRIMIANTION BASED ON RACE & RETALIATION
## TITLE VII and ARTICLE 49b OF THE ANNOTATED CODE OF MARYLAND

30. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 29, inclusive, and incorporates the same by reference as though set forth fully herein.

31. Defendants, and each of them, through its agents or supervisor, engaged in a pattern and practice of unlawful discrimination on the basis of race or national origin by willfully terminating plaintiff's position in an act of retaliation.

32. Defendant, and its agents at all times relevant hereto had actual and constructive knowledge of the conduct described in paragraphs 1-29.

33. Defendants failed to take all reasonable steps to prevent the discrimination based on race from occurring and in addition were unable to articulate a legitimate non-discriminatory reason for Plaintiff's termination.

34. Defendants violated Title VII by failing to adequately supervise, control, or discipline and/or otherwise penalize the conduct, acts and failures to act of defendant as described in paragraphs 1-29.

35. As a direct and proximate result of defendant's actions, plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish, and emotional distress; she has suffered and will continue to suffer loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

36. Plaintiff is informed and believes, based thereon alleges, that the outrageous conduct of defendant described above was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights, and with the intent to injure plaintiff. Plaintiff is entitled to punitive damages from defendant.

## COUNT II
### WRONGFUL TERMINATION

37. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 36 as fully set forth herein and further allege:

38. Plaintiff Brown at all times fully and competently performed all the duties assigned to her.

39. Plaintiff Brown was assigned to several projects with Med Star Health due to her excellence and commitment to his work.

40. Defendant's conduct in terminating Ms. Brown was deliberate, malicious, willful and intentionally calculated to inflict harm upon the Plaintiff.

41. Plaintiff's termination was wrongful and without any causes whatsoever in that it resulted solely from Ms. Brown's participation in a protected activity that involved a discrimination investigation against Med Star Health.

42. As a result of Defendant's wrongful termination of Plaintiff, Ms. Brown has been left to pursue employment with other agencies at a lower status, deprived of her ending salary, plus bonuses and other remuneration, suffered damage to her reputation and has otherwise been materially damaged.

## COUNT III
## BREACH OF CONTRACT

43.   Plaintiff repeats and re-alleges the allegations of paragraph 1 through 42, inclusive, and incorporates the same by reference as though set forth fully herein.

44.   On or around March 2003, Plaintiff was hired as an employee with Defendant, Med Star Health, and entered into an agreement of employment.  One of the terms of the agreement included assurances that Plaintiff's employment with Defendant would not be terminated without a hearing pursuant to the company's progressive discipline policy and unless exceptional circumstances warranted such drastic action.

45.   Defendant materially breached this agreement by terminating Plaintiff's employment without cause and by not allowing Ms. Brown an opportunity to challenge allegations made by Defendant through the company's disciplinary process as set forth in the Med Star Health Employee Handbook.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46.   Plaintiff repeats and re-alleges the allegations of paragraph 1 through 45, inclusive, and incorporates the same by reference as though set forth fully herein.

47.   On August 17, 2006 Plaintiff was forcibly escorted off of Georgetown University Hospital premises, without explanation or paperwork.

48.   On August 18, 2005 and as a result of the Defendant's action, Plaintiff was admitted to Southern Maryland Hospital suffering from a heart condition known as Angina.

49. This conduct was perpetrated by the agents, servants and employees of Defendant and within the scope of their employment. Defendant is responsible for all of the acts committed by its agents within the scope of their employment.

50. Defendant's conduct was intentional, reckless, and in deliberate disregard of a high degree of probability that emotional distress would result to the Plaintiff.

51. The aforesaid conduct by Defendant's agents was extreme and outrageous and beyond the bounds of decency in society.

52. The conduct of Defendant's agents was malicious, willful, and intentional.

53. As a result of the aforesaid conduct and actions, the Plaintiff has suffered and will continue to suffer severe and extreme emotional stress.

WHEREFORE, Plaintiff respectfully prays this Court:

(a) To award compensatory damages in excess of three hundred fifty thousand dollar ($350,000);

(b) To award Plaintiff liquidated damages pursuant to 29 U.S.C. §216(b)

(c) To award punitive damages against Defendant in an amount in excess of six hundred thousand dollar ($600,000);

(d) To award reasonable attorney fees and costs of this action; and

(e) To award such other further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues.

                                            Respectfully submitted,

                                            _____

                                            Reuben B. Collins, II Bar #14561
                                            Collins & Talley, LLC
                                            P.O. Box 1857
                                            La Plata, Maryland 20646
                                            (301) 932-4366
                                            (301) 932-168 facsimile
                                            **FOR PLAINTIFF**