# EXHIBIT

# 1



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Keith J. Harrison
(202) 624-2560
kharrison@crowell.com

February 6, 2008

Reuben B. Collins, II, Esq.
Collins & Talley, LLC
201 Centennial Street, Suite A-2
La Plata, MD 20646

    Re: *Bonita Brown v. Georgetown University Hospital*, C.A. 1:06-CV-01417-RWR

Dear Reuben:

    During the recent status conference in the *Bonita Brown v. Georgetown University Hospital* matter, the Court strongly suggested that there are claims in the Complaint that you should review and consider dismissing. Based on our legal analysis, it is clear that the allegations of the Second Amended Complaint ("Complaint") in this case are completely meritless. In fact, not only are the allegations without factual or legal merit, but based on your client's own sworn testimony, it does not appear that there is a good faith basis upon which to continue this litigation. Indeed, this case fails to meet the standards under Federal Rule of Civil Procedure Rule 11 ("Rule 11"), and therefore, should be dismissed with prejudice. Accordingly, the purpose of this letter is to put you and your client on notice that we intend to consider moving for sanctions under Rule 11 in the event that this case continues. This letter sets forth the factual and legal support that leads to the conclusion that the claims in this case have no legal merit.

    Plaintiff's Complaint contains four counts, as follows: Count I – discrimination based on race or retaliation, Title VII and Article 49(b) of the Annotated Code of Maryland; Count II – wrongful termination; Count III – breach of contract; and Count IV – intentional infliction of emotional distress. Each of these claims fails to meet the standards of Rule 11.

    First, with regard to Count I, those allegations allege violation of Maryland law. However, as Ms. Brown plainly testified to under oath, all the allegations set forth in the Complaint are based on actions which occurred in the District of Columbia, and not Maryland. *See* Plaintiff's Deposition Transcript at 77:15-20. Therefore, Maryland law is completely inapplicable to the allegations of the Complaint.

    Second, Count I of the Complaint makes allegations based on allegations of "a pattern and practice of unlawful discrimination on the basis of race or national origin by willfully terminating Plaintiff's position in an act of retaliation." *See* Complaint at ¶ 31. However, it is a basic requirement of any Title VII claim that a plaintiff must first exhaust his or her administrative remedies before filing suit. In this case, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission on November 18, 2005. However, this

Reuben B. Collins, II, Esq.
February 6, 2008
Page 2

charge of discrimination was expressly limited by your client to allegations of national origin discrimination. *See* Plaintiff's Deposition Transcript at 78:4 – 90:18. Plaintiff's charge of discrimination makes no claims regarding either race or retaliation. *See* EEOC Notice of Charge of Discrimination dated August 11, 2005. Therefore, Plaintiff's claims under Title VII based on race discrimination and retaliation must be dismissed as a matter of law for failure to exhaust administrative remedies. It makes no difference that your client was not represented by counsel at the time that she completed the charge of discrimination. Indeed, that is almost always the case at the administrative level.

Plaintiff's federal claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Before suing under either Act, an aggrieved employee must exhaust administrative remedies. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (Title VII); 42 U.S.C. § 12117(a) ("Failure to exhaust administrative remedies deprives a district court of subject matter jurisdiction."). *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). The purpose of this strict requirement is to allow "the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996). It is appropriate to grant a defendant's motion for summary judgment when a plaintiff fails to demonstrate exhaustion of administrative remedies. *See Siegel v. Kreps*, 654 F.2d 773 (D.C. Cir. 1981). "The requirement of some specificity in a charge is not a 'mere technicality.'" *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1996) (dismissing hostile work environment claim due to failure to exhaust administrative remedies where EEOC charge was limited to national origin claim). "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* "[T]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Id.* Other courts have reached the same result. *See, e.g., Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 672-73 (8th Cir. 1994); *Prizevoits v. Indiana Bell Tel. Co.*, 882 F. Supp. 787, 791-92 (S.D. Ind. 1995); *Riley v. Technical and Management Servs. Corp.*, 872 F. Supp. 1454, 1459 (D. Md. 1995); *Cabiness v. YKK (USA), Inc.*, 859 F. Supp. 582, 586-87 (M.D. Ga. 1994); *Reese v. Goodyear Tire & Rubber Co.*, 859 F. Supp. 1381, 1387 (D. Kan. 1994); *Revis v. Slocomb Indus., Inc.*, 814 F. Supp. 1209, 1219 (D. Del. 1993); *Ghahramani v. BASF Corp.*, 755 F. Supp. 708, 710-11 (M.D. La. 1991); *Baltzer v. City of Sun Prairie/Police Dep't*, 725 F. Supp. 1008, 1019 (W.D. Wis. 1989); *Torriero v. Olin Corp.*, 684 F. Supp. 1165, 1170 (S.D.N.Y. 1988).

Third, any retaliation claims that Plaintiff may have had must also be dismissed based on her sworn testimony as to the nature of her "protected activity." Plaintiff testified during her deposition that the allegations of retaliation in the Complaint were based on her belief that "Ms. Humphrey was trying to get rid of me because of her personal issues. … I believe she was having an affair with her ex-boyfriend." *See* Plaintiff's Deposition Transcript at 114:13 – 115:2. She specifically identified the "protected activity" she was referring to in the Complaint as the affair circumstances with the ex-boyfriend. Indeed, your client testified as follows:

Reuben B. Collins, II, Esq.
February 6, 2008
Page 3

> Q: Now, based on what you described, it sounds like the real reason that Ms. Humphrey was trying – was taking these actions that you're complaining about is because of this affair with her ex-boyfriend.
>
> A. Yes, sir.
>
> Q: Now, on page 7 of the Complaint, paragraph 41, paragraph 41 states: "Plaintiff's termination was wrongful without any causes whatsoever in that it resulted solely from Ms. Brown's participation in protected activity." Is the protected activity you're referring to in the Complaint the affair circumstances with the ex-boyfriend?
>
> A: Yes, sir.

*See* Plaintiff's Deposition Transcript at 116:2-16. Personal disputes based on rumors of extramarital affairs hardly qualify as "protected activity" under Title VII. Plaintiff's sworn testimony comes nowhere close to establishing a factual or legal basis for an allegation that she engaged in any protected activity.

Moreover, the EEOC charge of discrimination in this case was filed around the same time Ms. Brown left Georgetown University Hospital to begin Family Medical Leave, which lasted until she submitted her letter of resignation. *See* Plaintiff's Deposition Transcript at 69:1 – 71:6. Likewise, Ms. Brown's EEOC charge of discrimination makes no mention of retaliation or protected activity. The fact that there is no basis on which a court could find that she engaged in any protected activity not only undermines your client's retaliation claims, but also eliminates your client's wrongful termination claim.

Fourth, as pled in Count II, the wrongful termination claim was also dependent on Ms. Brown's participation in "protected activity." Indeed, the essence of the wrongful termination is set forth in Paragraph 41 of the Complaint, which reads as follows:

> 41. Plaintiff's termination was wrongful and without any causes whatsoever in that it resulted solely from Ms. Brown's participation in a protected activity and involved a discrimination investigation against MedStar Health.

Based on Ms. Brown's own sworn testimony that the "protected activity" was, in reality, the Plaintiff's belief that her supervisor was trying to get rid of her to cover up an affair she was having with an ex-boyfriend renders the wrongful termination claim utterly frivolous. *See* Plaintiff's Deposition Transcript at 116:2-16. Moreover, the Plaintiff admitted under oath that she was not terminated, but instead submitted a letter of resignation on November 14, 2005. *See* Plaintiff's Deposition Transcript at 95:17 – 96:6; *see also* 114:4-10. And there is no constructive discharge allegation in the Complaint. Amazingly, your client testified that she applied for and

Reuben B. Collins, II, Esq.
February 6, 2008
Page 4

received a Family Medical Leave in August 2005. *See* Plaintiff's Deposition Transcript at 69:1 – 71:6. Thereafter, while on Family Medical Leave from her position at Georgetown University Hospital, your client got another job at the Charlotte Hall Veterans Home Assisted Living complex, which she began on October 10, 2005. Indeed, your client testified that:

> Q:   Now, during the time that you were on family medical leave, did you obtain employment at another – did you obtain other employment?
>
> A.   Yes.
>
> Q:   And where did you obtain that other employment?
>
> A.   Charlotte Hall Veterans Home Assisted Living.
>
> ***
>
> Q:   So you had been working at that home for some time while you were employed at … Georgetown?
>
> A.   Yes.
>
> Q:   And you continued to work at the veterans home during the time of FMLA leave?
>
> A.   Yes.
>
> Q:   And did you miss any time from your work at the veterans home?
>
> A.   No.
>
> ***
>
> Q:   Now, you started work at the veterans home on October 10, 2005. At that time, you could have returned to work at Georgetown University Hospital. Correct?
>
> A.   I could have, yes.
>
> Q:   But you chose not to. Correct?
>
> A.   Yes.

*See* Plaintiff's Deposition Transcript at 72:7 – 76:9. Despite the fact that she was working another full-time job while supposedly on Family Medical Leave, your client submitted her letter

Reuben B. Collins, II, Esq.
February 6, 2008
Page 5

of resignation on November 14, 2005. By her own testimony, she could have come back to work, but chose to work elsewhere instead of returning to Georgetown. Under such circumstances, there is no factual or legal basis for any claim of wrongful termination.

Count III of the Complaint alleges that Ms. Brown entered into an agreement of employment which was subsequently breached when her employment was terminated without a hearing. As set forth above, Ms. Brown testified under oath that she submitted a letter of resignation while she was on Family Medical Leave and was not terminated. *See* Plaintiff's Deposition Transcript at 70:15 – 71:6. Moreover, Ms. Brown testified that the agreement she was referring to was the Collective Bargaining Agreement between the Hospital and the District 1199 D.C. Health Care Workers Union SEIU. *See* Plaintiff's Deposition at 76:15 – 77:8; *see also* 116:17 – 117:8. Thus, Count III of the Complaint alleges common law breach of contract based on the SEIU Union Contract. However, Ms. Brown has no claim under Section 301 of the Labor Management Relations Act ("LMRA") because she has not exhausted her remedies under that Union contract.

Such claims are preempted by federal law and the Court must resolve this dispute applying the law developed under Section 301 of the LMRA. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as preempted ..."); *Livadas v. Bradshaw,* 512 U.S. 107 (1994); *Avco Corp. v. Aero Lode No. 735,* 390 U.S. 557 (1968). When those cases are read in conjunction with *Wooddell,* 502 U.S. 93, it follows that any claim that depends upon the interpretation and application of a collective bargaining agreement should be preempted by § 301. *See Wall v. Construction & General Laborers' Union, Local 230,* 224 F.3d 168, 178 (2d Cir. 2000) (citations omitted) (holding state law claims arising out of union's refusal to readmit union members preempted by § 301); *see also Panczykowski v. Laborers' International Union of North America,* 2 Fed. Appx. 157, 160 (2d Cir. 2001) (holding union members' state law claims for defamation against union preempted by Section 301, where claims was based on the terms of the union constitution); *Local Unions 20 v. United Brotherhood of Carpenters and Joiners of America,* 223 F.Supp.2d 491, 499 (S.D.N.Y. 2002) (Preemption clearly applies to the present plaintiffs' claims of unconscionability to the extent those claims are based solely upon the UCC or the common law because plaintiffs challenged the validity of the national union's Constitution itself). Consequently, Count III of Plaintiff's Complaint are preempted by Section 301.

The court, however, does not have jurisdiction to address Plaintiff's Section 301 claim because Ms. Brown has not satisfied the statutory prerequisite of exhausting union remedies. The exhaustion of union remedies is a prerequisite to a § 301 action by an employee against an employer for breach of contract. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903 (1967). The Supreme Court has long held that, prior to commencing an action for breach of labor contract, "employees wishing to assert contract grievances must attempt to use the contract grievance procedure agreed upon by the employer and the union as the mode of redress." *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614 (1965). The Supreme Court in *Republic Steel*

further explained that the employee must afford the union an opportunity to act on his behalf. *Id.* But Ms. Brown never grieved the termination of her employment. Indeed, given the fact that she resigned, the Union would have had no basis for a grievance. Nevertheless, Ms. Brown never afforded the Union an opportunity to act on her behalf and went directly to the court; therefore, her Count III must fail for failure to exhaust her internal union remedies.

Finally, the last Count of the Complaint alleging Intentional Infliction of Emotional Distress should also be dismissed. Plaintiff admitted under oath that the actions that she believed constituted Intentional Infliction of Emotional Distress in the Complaint "all occurred in the context of her employment relationship with Georgetown University Hospital." *See* Plaintiff's Deposition at 117:9 – 118:16. Under the applicable District of Columbia case law, Plaintiff's allegations in the Complaint are "of the type that are attributable to employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct." *Thompson v. Jasas Corp.*, 212 F. Supp. 2d, 21, 28 (D.D.C. 2002) (quoting *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (DC 1997)). Under well-settled District of Columbia case law, Ms. Brown's allegations fail to rise to the level of outrageousness necessary to withstand a Rule 12(b)(6) motion to dismiss. More specifically, under the District of Columbia Court of Appeals decision in *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997), as adopted by the lower courts of this Circuit in *Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21, 28 (D.D.C. 2002) (dismissing intentional infliction claim under Rule 12(b)(6)), Ms. Brown's unfounded allegations are "of the type attributable to 'employer-employee conflicts that do not, as a matter of law, rise to the level of outrageous conduct.' " *Thompson*, 212 F. Supp. 2d at 28 (quoting *Kerrigan*, 705 A.2d at 628). In order to recover on a claim for intentional infliction of emotional distress, Ms. Brown "must demonstrate 'extreme and outrageous conduct which intentionally or recklessly cause[d] severe emotional distress.' " *Thompson*, 212 F. Supp. 2d at 27 (quoting *Rogala v. District of Columbia*, 161 F.3d 44, 57-58 (D.C. Cir. 1998)). In addition, "liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thompson*, 212 F. Supp. 2d at 27-28 (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)). More importantly, "District of Columbia Courts have been loath to find this degree of outrageousness in the employment context." *Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984)). In this case, the conduct alleged in Ms. Brown's Complaint "does not remotely approach the level of severity required for a cause of action for intentional infliction of emotional distress." *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997).

As set forth above, and as Judge Roberts strongly suggested during the status conference in open court, discovery has shown that the Complaint in this case has no basis in fact or law. We would appreciate your review of the allegations and the facts in this case so that we do not waste needlessly either parties' time or money. If you would, please contact me directly or

Reuben B. Collins, II, Esq.
February 6, 2008
Page 7

respond to this letter by February 29, 2008. Thereafter, we will begin to prepare our summary judgment motion and will be seeking attorney's fees and costs incurred after that date. Thank you for your consideration.

Sincerely yours,

Keith J. Harrison

#4923156