UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BONITA BROWN, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :  Case No.: 06cv01417 (RWR) |
| | : |
| GEORGETOWN UNIV. HOSP. | : |
| | : |
|     Defendant. | : |
| | : |

_____

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
# FOR SUMMARY JUDGMENT

    Plaintiff Bonita Brown, by and through counsel and pursuant to Fed. R. civ. P. 56 do hereby requests that this honorable court deny the Defendant's motion for summary judgment on all claims in this matter. In support of this motion Plaintiff states as follows:

    Defendant fails to establish that the Plaintiff's claim lacks material facts as to which there exists no genuine issue in dispute. Plaintiff's claim satisfies all statutorily required statute of limitations and as such is ripe for trial. A memorandum of Points and Authorities in support of this motion is attached hereto. Supporting exhibits and a proposed order are also attached.

    Respectfully submitted,

    _____/s/_____
    THE COLLINS LAW GROUP, LLC
    Reuben B. Collins, II (#459751)
    P.O. Box 1857
    La Plata, Maryland 20646
    (301) 934-4366

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BONITA BROWN : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No.: 06cv01417 (RWR) |
| : | |
| GEORGETOWN UNIV. HOSP. : | |
| : | |
| Defendant. : | |
| : | |

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bonita Brown, by and through counsel and pursuant to Federal Rule of Civil Procedure 56(b) respectfully moves that this Honorable Court deny Defendant's motion for summary judgment.

**STATEMENT OF THE CASE**

This is an employment discrimination and retaliation claim arising out of Plaintiff's termination as a Clinical Technician. Plaintiff alleges that she was terminated because of her race (African-American) and national origin (United States). Plaintiff's complaint alleges that Georgetown University Hospital treated her differently than other similarly situated clinical technicians. Plaintiff also alleges that he was constructively terminated and harassed for engaging in protected activity when he pursued disciplinary action against her supervisor. This action was brought against Georgetown University Hospital pursuant to Title VII, 42 U.S.C. § 2000(e) *et seq.*

**STATEMENT OF FACTS**

Plaintiff started working for Georgetown University on or around March 25, 2003 as a Clinical Technician. Due to her exemplary job performance Ms. Brown was nominated for Technician of the Year in May of 2004. (See Exhibit 1, Deposition of M. Humphey, page 20)

In January of 2005 Assistant Nurse Coordinator Mrs. Michelle Humphrey (nationality British) began conducting meetings with all employees except the Plaintiff. On or around May 05, 2005, Mrs. Humphrey submitted a letter informing Plaintiff that her schedule would change as of June 14, 2005. This schedule change created a serious challenge for the Plaintiff because the Plaintiff had always worked from 5:30 pm until 6:00am.

Ms. Humphrey accommodated another similarly situated (Caucasian) Clinical Technician's schedule because of daycare issues, from 7:00 am until 3:30 pm to 5:00am to 1:00pm effective June 01, 2005.

On May 25, 2005 a staff meeting was held and Mrs. Humphrey listened to all the nurses give their concerns about other staff members and repeatedly responded, "It's a culture thing". (See Exhibit 1, Humphrey deposition, page 78,79) After being discharged from the ER, a nurse came to C-41 requesting to occupy a bed without permission from the Charge Nurse and/or the Clinical Coordinator. Once in the room (C4113) the nurse (Caucasian) began acting out with disruptive behavior and no disciplinary action was taken against the nurse.

Due to a nurse's neglect to check a patients I.D. band, the patient was sent into the Operation room when he should have gone to the X-Ray Department. No disciplinary

3

action was taken in this instance. Plaintiff was not properly informed about a write-up that Mrs. Humphrey had in her possession for a week. Plaintiff was then pulled into an unexpected meeting on February 24, 2005 at 2:10 am with Mrs. Humphrey about the write-up.

On February 24, 2005 at 1:10 am Mrs. Humphrey called Plaintiff's home and asked for her address informing her that she was updating her personnel files. Later that day, Mrs. Humphrey made several phone calls asking Plaintiff if she had received anything from Fed-Ex.

On May 26, 2005 Plaintiff was sent home on suspension for one day without paper work. Plaintiff was told by Shawnee' Thomas and the Clinical "to return on her next scheduled day to work, and that Mrs. Humphrey would notify her the next business day or no later than 12:00 pm on Tuesday, because it was holiday weekend.

On May 31, 2005 at 3:14 pm two hours before her shift started, Mrs. Humphrey called Plaintiff on her cell phone and told her not to come to work, stay home, and come back tomorrow. Then Mrs. Humphrey changed her statement and said not to come to work because Plaintiff was being "investigated" without giving reason and hung up the telephone.

On June 01, 2005 an envelope was stuck in Plaintiff's door with Mrs. Humphrey's handwriting on it and with a letter from Mrs. Humphrey in reference to Plaintiff's suspension from May 26, 2005 until June 06, 2005.

On August 01, 2005 another envelope was stuck in Plaintiff's door with a letter about a meeting to be held with Mrs. Humphrey, Plaintiff's Union Representative and

4

Plaintiff on August 03, 2005. A second copy of the letter was placed in Plaintiff's unit mailbox.

On August 04, 2005 Plaintiff received a written warning form Mrs. Humphrey by Fed-Ex, a second one form Oriental Express and a third copy came regular mail, a fourth copy came by second Fed-Ex and fifth copy was placed in Plaintiff's mailbox on the unit.

On August 17, 2005 at 9:30 pm Mrs. Humphrey had Plaintiff escorted off of Georgetown University Hospital premises, without any explanation or paperwork. (See Exhibit 1, Humphrey Deposition page 72)

On August 18, 2005 Plaintiff was admitted to Southern Maryland Hospital for suffering from Angina. Mrs. Humphrey called Plaintiff's cell phone at 10:15 am leaving a message that Plaintiff was removed from the schedule and FED-EX will be delivering the letter later in the day.

On August 19, 2005, Fed-Ex and Oriental Express attempted to make a delivery of the letter from Mrs. Humphrey, leaving reminders on Plaintiff's door.

On August 22, 2005 after being discharged from Southern Maryland Hospital around 9:15 pm Plaintiff discovered more reminders from Fed-Ex.

On August 23, 2005 Fed-Ex arrived at Plaintiff's door once again delivering the letter Mrs. Humphrey had telephoned Plaintiff about why she was hospitalized. The letter stated that Plaintiff was being removed from the schedule until further reviewed by Employee and Labor relations. On August 27, 2005 once again after arriving home early evening Plaintiff discovered a duplicate letter from Michelle Humphrey about her being removed from the schedule.

## STANDARD OF REVIEW

The Supreme Court set forth the governing standards for issuance of summary judgment in *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotox* the Court recognized the vital need for summary judgment motions to the fair and efficient functioning of the justice system:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action. "Fed. Rule Civ. Proc.1
> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.
> *Id.* at 327, 106 S.Ct. at 2555.

In ruling upon a summary judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986). The inferences however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993). In addition, the non-moving party may not rely solely on allegations or conclusive statements. *Greene v. Dalton,* 164 F.3d 671, 675.

If the trier of fact finds that the elements of the prima facie case are supported by a preponderance of the evidence and the employer remains silent, the court must enter judgment for the plaintiff. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509-510, 113 S.Ct. 2748-2749 and n.3; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Based on this standard and on the

record of this case, Plaintiff may easily sustain her burden and as a result avoid the entry of summary judgment in favor of the Defendant.

## ARGUMENT

A. **Summary Judgment Must Be Denied As To Defendant's Claim That Plaintiff's Claim Under Article 49(B) Of The Annotated Code Of Maryland Is Inapplicable.**

Defendant's claim for summary judgment should be dismissed because Maryland law explicitly prohibits employment discrimination based on race and gender. Md. Code Ann. Art. 49(B)§ 16.

Article 49B of the Maryland Annotated Code prohibits employment discrimination based on one's "race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information, or disability." Article 49B was amended in 2007 to permit a private cause of action against an employer for violations of Maryland's discrimination laws if "(1) The complainant initially filed an administrative charge or a complaint under federal, State, or local law alleging a discriminatory act by the respondent; and (2) At least 180 days have elapsed since the filing of the administrative charge or complaint." Md. Ann.Code Art. 49(B), § 11B (2007).

[D]istrict court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case and controversy." 28 U.S.C. § 1367(a)

The state causes of action in the instant suit… are based on the same alleged discriminatory acts as the Title VII claims. Therefore, these claims fall within the supplemental jurisdiction of the Court. *Godfrey v. Perkin-Elmer,* 794 F.Supp. 1179 (D.N.H.1992).

7

Plaintiff's claim of national origin discrimination, racial discrimination and retaliation all stem from the same alleged discriminatory act. Therefore, the Court has jurisdiction to her added claims. Therefore, summary judgment as to those claims must be denied.

> B. **Plaintiff Has Exhausted Her Administrative Remedies and Jurisdiction In This Court is Proper As To Plaintiff's Claims Of Racial Discrimination And Retaliation.**

Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge. Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself. 42 U.S.C. § 2000e-5(f)(1).

A Title VII lawsuit following the EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). *Minetos v. City University of New York,* 875 F.Supp. 1046, 1052 (S.D.N.Y.1995) (where facts show that the EEOC was alerted to a possible discrimination, although not specifically alleged in EEOC charge, discrimination claim in federal complaint will not be dismissed for failure to exhaust remedies); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 399 (3d Cir.1976) (where EEOC received two charges of discrimination against employer by plaintiff while investigating prior similar charge against same employer, district court had jurisdiction to hear plaintiff's federal suit, which "encompassed all the instances of discrimination").

Moreover, claims may still be considered "reasonably related" even if the EEOC did not investigate the charge, so long as it had the opportunity to do so. *See Otterbacher v.*

8

*Northwestern University,* 838 F.Supp. 1256, 1260 (N.D.Ill.1993) (citing *Babrocky v. Jewel Food Co. and Retail Meatcutters Union,* 773 F.2d 857, 864 n. 2 (7th Cir.1985)); *Forehand v. Florida State Hosp. at Chattahoochee,* 839 F.Supp. 807, 819 (N.D.Fla.1993).

In Plaintiff's case, she raised a claim of national origin discrimination in her EEOC complaint. Plaintiff has also expressly stated words that reasonably relate to a claim of racial discrimination. Subsequently in her complaint she also alleged claims of racial discrimination and retaliation. These claims are proper under the Court's jurisdiction where they are reasonably related to the allegations of the initial EEOC charge.

C. **Plaintiff's Claim As To Reverse National Origin Discrimination Is Proper.**

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a)(1). When a Plaintiff has no direct evidence of discrimination, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), under which a plaintiff must make a prima facie showing of discrimination in order to shift the burden to the employer-defendant to establish a legitimate, non-discriminatory reason for the employment action; and, if the defendant establishes such a reason, the burden shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination. *See Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 850 (D.C.Cir.2006).

In the typical racial discrimination case, the plaintiff must first establish a prima facie case of racial discrimination by demonstrating, *inter alia,* that [s]he belongs to a racial minority. *Kondrat v. Ashcroft,* 167 F.Supp. 2d. 831 (E.D.Pa 2001). To make out a prima facie case, a plaintiff must show that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." George v. Leavitt, 407 F.3d 405, 412 (D.C.Cir.2005).

In order for the Plaintiff to establish a prima facie case in such a situation, the plaintiff must present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII, that is race, color, religion, sex, or national origin. *Iadimarco v. Runyon,* 190 F.3d 151, 161 (3d Cir.1999).

Plaintiff can establish a prima facie case of reverse national origin discrimination where Plaintiff is of African American national origin. Plaintiff suffered an adverse action where she was not treated fairly in her employment and falsely accused of being insubordinate by her supervisor who was of non American origin and where the Plaintiff's supervisor made comments in reference to the Plaintiff that is must be a "cultural thing".

### Plaintiff exhausted administrative remedies with her Retaliation claim

The scope of a Title VII action filed in federal court is limited to "the scope of the administrative investigation that can reasonably be expected to follow the administrative charge of discrimination". *Chisolm v. U.S. Postal Service,* 665 F.2d 482, 491 (4th Cir. 1981); *See Hicks v. Baltimore Gas & Elec. Co.,* 829 F.Supp. 791 (D.Md., 1992)

However is a plaintiff's claims in his judicial complaint are reasonably related to his EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in his subsequent civil suit. *Smith v. First Union Natl Bank,* 202 F.3d 234, 247-48 (4th Cir. 2000)

On August 1, 2005 Plaintiff filed an EEOC charge of Discrimination (Defendants Exhibit 15) against the Defendant and marked "national origin" as the basis. In the EEOC charge narrative Ms. Brown stated that she "worked in the Respondent's Med-Star Health Unit as a technician in radiology for about four years. During that time and especially during the last six months, my supervisor Unit Manager Ms. Humphrey (British) has harassed me". Plaintiff does not specify retaliation however her narrative concludes with the statement "On May 28, 2005, I wrote a lengthy letter to the human resources office detailing the problems I have encountered". Plaintiff's complaint alleges the same violation of Title VII in a addition to a subsequent charge of retaliation. Her emphasis on suggesting that the harassment intensified "especially during the last six months" suggest that she was targeted after writing a complaint with the human resource office on May 28, 2005.

Since Title VII retaliation claims are related to and grow out of allegations contained in an EEOC charge, they are appropriately raised for the first time in federal court. *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir. 1992) This rule recognizes that a plaintiff will be reluctant to again report to the EEOC after his employer has taken action against him for filing the first charge. *Riley v. Technical & Management Services, Inc.* 872 F. Supp. 1454, 1459-60 (D.Md 1995). Furthermore, a plaintiff alleging retaliation arising from the filing of a Title VII charge may do so for the first time in court if the retaliation

11

allegedly occurs while her underlying charge is pending. *Nye v. Roberts,* 97 F.Supp. 2d 677, 679 (D.Md. 2000). See *Allen v. Rumsfeld* 273 F.Supp. 2d 695, 704 (D.Md 2003)

## **COUNT II WRONGFUL TERMINATION CLAIM**

Plaintiff's claim rises to the level of "constructive discharge" in this jurisdiction. Plaintiff did admit under oath that she admitted a letter of resignation however that letter was admitted under duress. Title VII's prohibition against discharging includes the situation where an employer, while not actually and formally discharging an employee, makes conditions of continued employment intolerable so as to result in a "constructive discharge". *See e.g., Bishop v. District of Columbia,* 788 F.2d 781 (D.C. Cir. 1986). This Circuit requires a finding that "the employer deliberately made working conditions intolerable and drove the employee into 'an involuntary quit'" *Id.* 790 (citations omitted) The Court of Appeals in outlining the proper standard to use when determining whether an employee was constructively discharged relied on the standard outlined by the Fifth Circuit: "a finding of constructive discharge requires a determination that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign'. *Clark v. Marsh,* 665 F.2d 1168, 1173 (quoting *Bourque v. Powell Electrical Manufacturing Company,* 617 F.2d 61 (5th Cir. 1980) (other citations omitted). This clearly the circumstances in the case at bar. The purported meeting to review Plaintiff's annual evaluation never occurred because Plaintiff was not allowed to meet represented by counsel. The August 17, 2005 act of escorting Plaintiff off the premises was done to demean her and was also done to make

12

her work environment unbearable. Plaintiff's resignation was therefore not unreasonable and consistent with the standards set forth in evaluating a "constructive discharge" claim.

## COUNT III BREACH OF CONTRACT CLAIM

Plaintiff maintained under oath that she made every effort to pursue her claim pursuant to the collective bargaining agreement however management at the hospital refused to allow her to meet with management with her union representation. (Plaintiff's deposition page 60) Article 21 of the employment agreement entered between Georgetown University Hospital and District 1199E-DC, Health Care Workers Union, S.E.I.U., (Exhibit 2 ) states that an "employee, upon request, has the right to have a union delegate present when being discharged or during the issuance of an official warning or suspension".

Plaintiff diligently sought to follow the procedures set forth in the SEIU collective bargaining agreement as best she could despite efforts by Georgetown Hospital to thwart her attempts to meet with management while being represented by counsel. Plaintiff requested union representation and informed Hospital management that she would not meet unless she was represented. This court faced a similar series of facts in *Beebe v. Washington Area Transit Authority,* 129 F.3d 1283. Beebe like the Plaintiff, was a member of a local who attempted to exhaust his administrative remedies. Before filing his complaint, Beebe initiated the collective bargaining agreement's grievance procedure's progressing through the first two of the four steps. Beebe asserted that notwithstanding the collective bargaining agreement's requirement that it respond to a step three grievance within ten days, it never answered his filing. The court ruled that "under these circumstances, WMATA has waived its exhaustion defense. *Beebe* at 1287,

*Cf. Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914 17 L.Ed. 2d 842 (1967) ("[W]hen the conduct of the employer amounts to a repudiation…the employer is stopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action".) (citations omitted)

The record clearly shows that Plaintiff made every reasonable effort available to her to follow the collective bargaining agreement.  As a result of the Defendant's refusal to allow Plaintiff to be represented by her union, her breach of contract claim should stand.

## COUNT IV INTENTIONAL INFLICTION CLAIM SHOULD STAND

Plaintiff was removed from the Hospital premises in front of other employees.  It was the intention of staff to humiliate Ms. Brown while her peers were watching.  To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either **intentionally** or **recklessly** (3) causes the plaintiff sever emotional distress.  *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C. 1984) (quoting *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C. 1982).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Homan v. Goyal,* 711 A.2d 812, 818 (D.C. 1998)  In general, "a case of intentional infliction of emotional distress is made out only if the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' *Homan, supra,* 711 A.2d at 818 (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965).  The court in *Larijani v. Georgetown,* 791 A.2d 41, remanded a

lower court decision when it concluded that a jury would be more suitable to make an informed evaluation of what constituted "outrageous". Plaintiff was escorted out of the hospital on August 17, 2005 during regular hospital hours and in front of her peers. As a result of this action, Plaintiff was admitted to Southern Maryland Hospital suffering from Angina, a heart condition. The Plaintiff was clearly traumatized by being forcefully escorted off the premises of her former job. It is not a stretch to conclude using a reasonable person standard that most individuals would consider such an action extreme and would resent the action. The court should therefore maintain this cause of action for review by jury.

## CONCLUSION

Wherefore for the foregoing reasons, Defendant's summary judgment motion should be denied on all four counts.

Respectfully submitted,

\_\_\_\_\_/s/_____
THE COLLINS LAW GROUP, LLC
Reuben B. Collins, II (#459751)
P.O. Box 1857
La Plata, Maryland 20646
(301) 934-4366

CERTIFICATE OF SERVICE

      I HEREBY certify that a copy of the foregoing was delivered via electronic filing this 21st day of April, 2008 to the following:

Keith J. Harrison, Esquire
Daniel M. Creekan, Esquire
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004

                              _____/s/_____
                              Reuben Collins