UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BONITA M. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:06-CV-01417 (RWR) |
| | ) | |
| GEORGETOWN UNIVERSITY HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

The Defendant, Georgetown University Hospital (the "Hospital") submits this reply to

the Plaintiff's *Response to Defendant's Motion for Summary Judgment* ("Plaintiff's Response").

### I.

### **INTRODUCTION**

The Plaintiff's Statement of Facts fails to create any genuine issue as to any material fact

that would preclude summary judgment. The following facts remain undisputed:

1.  All the events at issue in the case occurred in the District of Columbia;

2.  Plaintiff was an at-will employee and a member of the Health Care Workers Union SEIU during her employment;

3.  Plaintiff's employment was plagued with disciplinary problems and she admits to being insubordinate and refusing to meet with her supervisor for an evaluation;

4.  Plaintiff and her supervisor are of the same race and plaintiff admits her retaliation claim is based on personal issues with her supervisor;

5.  Plaintiff is American and no record evidence exists that shows her American origin motivated any discrimination;

6.  Plaintiff cannot show any pretext by the Hospital because the Hospital had undisputed reasonable reasons for all actions it took;

7. Plaintiff took FMLA leave and while on leave worked for another employer;

8. Plaintiff admits she could have returned to the Hospital after her FMLA leave but chose not to, opting instead to submit a written letter of resignation;

9. Plaintiff exhausted neither her claims through her union and its grievance process as required by law and under the contract nor her administrative remedies under Title VII as she never filed an EEOC charge of race discrimination or retaliation; and

10. Plaintiff based her claim for intentional infliction of emotional distress on conduct that occurred in the context of her employment which as a matter of law cannot sustain the claim.

*See* Defendant Georgetown University Hospital's Statement of Material Undisputed Facts, D.E. No. 22, at pp. 3-15 (the "Hospital's Statement of Material Undisputed Facts"). These undisputed facts require summary judgment and dismissal of the Plaintiff's case in its entirety. The Plaintiff's failure to present credible evidence to rebut these material facts is fatal to her claims and requires entry of summary judgment, as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986).

## II.

## ARGUMENT

### A. Plaintiff Cannot Rely on her own Speculation, Surmise and Unfounded Statements nor Rely on Irrelevant Facts to Defeat Summary Judgment

Comparing the Plaintiff's Response, to the Hospital's opening motion, supporting brief and record evidence, demonstrates that no material facts are disputed and summary judgment is appropriate. And although she ostensibly submitted a Statement of Facts ("Statement of Facts") her statement only contains speculation and conjecture—not facts. What is more, the few facts that the Plaintiff did offer with evidence are neither relevant nor disputed. Because the Plaintiff's opposition consists of unsupported allegations and conjecture, she has neither disputed the Hospital's well-supported material facts nor forestalled summary judgment.

Under Federal Rule of Civil Procedure 56(e) the Plaintiff, as an adverse party:

> ... may not rest upon the mere allegation or denials of [her] pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. ...

Fed.R.Civ.P. 56(e) (2008); *see also* this Ct.'s Sched. Order, D.E. No. 13 at ¶ 7.

"A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *See Anderson*, 477 U.S. at 248. And an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see also Scott v. Harris*, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial'").

And while the non-movant's evidence is "to be believed" and "all justifiable inferences are to be drawn in [her] favor" the non-moving party must present evidence—not unsupported allegations or denials. *See Hartford Co. v. Harrison*, 301 U.S. 459, 462 (1937) (to survive a motion for summary judgment, a plaintiff may not rely on her own "conjecture or surmise"); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (a plaintiff may not oppose summary judgment by relying "simply on conclusory statements ... or upon the mere allegations or denials of the adverse party's pleading"); *cf. Crenshaw v. Georgetown Univ.*, 23 F. Supp. 2d 11, 15 (D.D.C. 1998) (the non-moving party "bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial"); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996). Indeed, Local Rule 7(h) provides, in pertinent part:

> An opposition to . . . a motion [for summary judgment] shall be accompanied
> by a separate concise statement of genuine issues setting forth all material
> facts as to which it is contended there exists a genuine issue necessary to be
> litigated, which shall include parts of the record relied on to support the
> statement . . . . In determining a motion for summary judgment, the court may
> assume the facts identified by the moving party in its statement of material
> facts are admitted, unless such a fact is controverted in the statement of
> genuine issues file in opposition to the motion.

LCvR 7(h) (2008). If the non-movant's evidence is "merely colorable" or "not significantly

probative" summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50. Indeed, to defeat a

motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support

[her] claims." *Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001).

### 1. Plaintiff Cannot Rely on her own Speculation, Surmise and Unfounded Statements to Defeat Summary Judgment

Although the Plaintiff presents her Statement of Facts, presumably, to dispute the

Hospital's Statement of Material Undisputed Facts, it is wholly deficient. First, the Plaintiff's

opposition rests almost entirely on the allegations contained in the Second Amended Complaint

and the EEOC charge. *Compare* Pl.'s Resp., D.E. No. 26 *with* Second Amended Compl., D.E.

No. 6 and EEOC charge, D.E. No. 22-15. It contains allegations—nothing more. The Plaintiff's

Response is neither accompanied nor supported by any sworn affidavit or declaration or other

competent evidence as required by Federal Rule 56. Regurgitating unsupported allegations from

pleadings alone does not equal evidence. But even if such allegations can defeat summary

judgment—which they cannot—there is not a single material fact among them that would

prevent summary judgment in this case.

Also, the few facts that Plaintiff attempts to support with evidence are either irrelevant or

undisputed. *See infra* § A(2). Because she failed to present one scintilla of record evidence

upon which a reasonable jury could return a verdict for her, no genuine issue for trial exists and

summary judgment should be granted.  Accordingly, this Court may treat the Hospital's

Statement of Material Undisputed Facts as conceded.  *See* LCvR 7(h); *see also Jackson,* 101

F.3d at 154 (affirming summary judgment for defendant-employer where plaintiff failed to file a

proper statement contesting the defendant's statement of undisputed facts).

### 2.  The Evidence Plaintiff Presents in her Response Supports Either Irrelevant or Undisputed Facts and thus Fails to Defeat Summary Judgment

The handful of allegations that the Plaintiff tries to support with evidence are either

~~irrelevant or immaterial, therefore, they do not defeat summary judgment.  In her Statement of~~

Facts, the Plaintiff relies on the deposition of her supervisor, Michelle Humphrey ("Humphrey

deposition"), three times.  *See* Pl.'s Resp., D.E. No. 26 at p. 3, 5.  What is more, Plaintiff only

cites two other pieces of evidence: a single page to her deposition and the union's Collective

Bargaining Agreement ("CBA").  *See id.* at p. 13.  Taking each in turn, none of this evidence

shows that a genuine issue of material fact exists as related to any of her claims.

In her Statement of Facts, the Plaintiff cites the Humphrey deposition but in doing so she

only manages to support irrelevant or immaterial facts.  For instance, the Plaintiff cites the

deposition to show that she was nominated for Technician of the Year in May 2004.  *See* Pl.'s

Resp., D.E. No. 26 at p. 3.  So what.  First, none of the conduct at issue, either the Plaintiff's or

the Hospital's, occurred during 2004.  Instead, it occurred in 2005.  Thus, an award the Plaintiff

received in 2004 is irrelevant.  Moreover, the Plaintiff, though nominated in 2004, did not

actually win the award but only received it by default because the technician who actually won

declined to accept it.  *See* Humphrey Depo. Tr. at 20:1–22:22 attached hereto as Exh. A.  The

2004 award is immaterial and has no baring on the issues in this lawsuit at all.

The other facts set forth in the opposition are both undisputed and immaterial.  The

Plaintiff also cites the Humphrey deposition to show that: 1) a team meeting occurred on May

25, 2005 wherein the team members discussed the unit's breakdown in communication and her supervisor attributed the breakdown to a "culture thing" explaining that what may be a non-offensive hand gesture in one culture might be considered offensive in another, *see* Pl.'s Resp., D.E. No. 26 at p. 3; and 2) she was escorted out of the Hospital after she refused three times to meet with her supervisor for her performance evaluation. *See id.* Neither fact is disputed. First, the Hospital submitted the same excerpt from the Humphrey deposition regarding the team meeting. *See* Exh. 5 to Def.'s Mot. for Sum. J. at D.E. No. 22-6. Second, the Hospital submitted several of its own documents to show that the Plaintiff had been escorted off the premises in August due to her gross insubordination. *See* Exhs. 24-28 to Def.'s Mot. for Sum. J. at D.E. No. 22-25 – 22-29. Both the team meeting, what happened at the meeting, as well as the escort from the Hospital and the reasons why are all well-documented. These facts are not disputed and, as argued in the opening brief, they support summary judgment on all the Plaintiff's claims.

Lastly, the Plaintiff cites her own deposition and the CBA to support her claim that "she made every effort to pursue her claim pursuant to the collective bargaining agreement however management at the hospital refused to allow her to meet with management with her union representation." *See* Pl.'s Resp., D.E. No. 26 at p. 13. By doing so she attempts to dispute the Hospital's well-supported fact that the Plaintiff failed to exhaust her remedies through the CBA grievance procedures, as required by law, and as such cannot sustain a claim for breach of contract. The opposition, however, does not dispute the key dispositive fact that the Plaintiff never filed a grievance concerning her performance evaluation or the fact that she was escorted from the Hospital due to her insubordination. As a result, the only evidence in the record is that Plaintiff failed to exhaust her remedies through the CBA grievance process and summary judgment should be granted on the breach of contract claim as a matter of law.

Simply put, Plaintiff did not exhaust her CBA remedies. At anytime thereafter in August

2005, if she thought she had been aggrieved, she could have pursued the grievance procedures in

the CBA, up to and including arbitration. *See* Exh. 33 to Def.'s Mot. for Sum. J. at D.E. No. 22-

34, Art. 22-23. She did not. Instead, she applied for and received FMLA leave; found another

job while on leave; decided to keep her new job and resigned when her FMLA leave ended. *See*

Def.'s Motion for Sum. J., D.E. No. 22 at pp. 9-12. In this regard, the Plaintiff's breach of

contract claim fails as a matter of law.

**B. Summary Judgment is Appropriate as to Plaintiff's Claim under Maryland Annotated Code 49(B) Because the Statute Cannot: Apply to Activity Outside Maryland; Apply Under Supplemental Jurisdiction; or Apply Retroactively**

In her opposition, Plaintiff argues that under supplemental jurisdiction, this Court can

hear her discrimination claim allegedly arising under Maryland Code Annotated Article 49(B)

("Article 49(B)"). But there are at least three reasons the Maryland statute can not apply to the

events which occurred in the District: 1) the statute cannot apply beyond its borders; 2) it would

not apply under a supplemental jurisdiction, choice of law analysis; and 3) the statutory

provision upon which she relies cannot apply retroactively.

It is axiomatic that neither our laws nor our constitutional system allows one state to

either regulate the activity that occurs in another state or project its legislative power beyond its

own borders. *Virginia v. Maryland*, 540 U.S. 56, 90-91 (2003); *see also Baldwin v. G. A. F.

Seelig, Inc.*, 294 U.S. 511, 522-24 (1935) (holding that one state can neither impose nor enforce a

state regulation that will effect the citizens of another state even if the statute will protect those it

regulates, it is still an invalid exercise of that state's internal police power). Here, it is

undisputed that all the events at issue occurred in the District and beyond Maryland's boarders.

Yet assuming for a moment that Article 49(B) can apply beyond its borders, which it cannot, the statute would still be subject to a basic choice-of-law analysis and inevitably would not apply. "When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006). Where, as here, a plaintiff argues that federal jurisdiction over a claim is based on supplemental jurisdiction, the court must use "the choice of law rules prevailing in the District of Columbia," to determine the law of the state that governs. *Id.* Under the District of Columbia choice-of-law rules, therefore, the state with the most significant relationship to the matter at issue controls. *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1026 (D.D.C. 1994). And the state where the conduct occurred will be the state with the most significant relationship. *Hitchcock v. United States*, 665 F.2d 354, 361 (D.C. Cir. 1981). Therefore, under a choice of law analysis, District of Columbia, and not Maryland, law applies.

Finally, even if applying Article 49(B) in this case passed constitutional muster and the basic choice-of-law analysis, the Plaintiff's claim under it would still fail as a matter of law because she attempts to apply Article 49(B) § 11B retroactively. The Plaintiff claims that she can bring a private cause of action for discrimination against an employer generally under Article 49(B) as articulated under Section 11B. *See* Pl.'s Resp. at p. 7; *see generally* Md. Code Ann. 49(B) § 11B (2008). But Section 11B, the provision upon which she specifically relies, was enacted on October 1, 2007, over a year *after* she first filed suit. *Id.*

Prior to October 1, 2007, plaintiffs were not permitted to bring a private cause of action under the Maryland code. *See Willey v. Ward*, 197 F. Supp. 2d 384, 388 (D. Md. 2002) (holding that no private right of action exists under Art. 49(B)). In 2007, the Maryland General Assembly

8

amended Article 49(B) to allow such a private cause of action. *See* Md. Ann. Code Art. 49(B) §

11B. The amendment took effect October 1, 2007, and it expressly limited its applicability to

claims that occurred after that date. *See id.*; *see also Jarvis v. Chimes, Inc.*, C.A. RBD-06-1197,

2008 U.S. Dist. LEXIS 16541, 19-21 (D. Md. Mar. 4, 2008) (quoting S. 678 & H.R. 314, 422d

Gen. Assem., Reg. Sess. [Md. 2007] that "the amendments to Article 49B 'shall be construed to

apply only prospectively and may not be applied or interpreted to have any effect on or

application to any cause of action arising before the effective date of this Act'"); *Tucker v.*

*Parents Place of Md.*, C.A. , RDB-06-1926, 2008 U.S. Dist. LEXIS 23592, 27 (D. Md. Mar. 20,

2008) (same). Thus, any claim under Article 49(B) § 11B that is based on events occurring

before October 1, 2007, must fail as a matter of law. *See Jarvis*, 2008 U.S. Dist. LEXIS 16541 at

19-21 (granting summary judgment for defendant "[b]ecause all of the events leading to this

lawsuit occurred before October 1, 2007, the amended version of the statute does not apply");

*Tucker*, 2008 U.S. Dist. LEXIS 23592, 27 (same).

**C. Summary Judgment is Appropriate as to Plaintiff's National Origin, Racial Discrimination and Retaliation Claims**

**1. Plaintiff Failed to Present any Evidence Supporting the Merits of Either her Discrimination or Retaliation Claims from which a Reasonable Jury Could Find in her Favor**

The Plaintiff's Response is completely devoid of any fact from which a reasonable jury

could find in her favor on the merits of her national origin or any alleged racial discrimination or

retaliation claim even if this Court's jurisdiction were appropriate as to the latter two claims—

which it is not, *see infra* § (C)(2)). And while she mechanically repeated her legal conclusions

regarding the propriety of her national origin claim in one paragraph, *see* Pl.'s Resp., D.E. No.

26 at p. 10, she failed to proffer any facts or even a response as to the merits of her alleged racial

discrimination and retaliation claims. The Plaintiff, therefore, has failed to dispute any of the facts the Hospital proffered that warrant summary judgment on the merits of these claims.

### 2. Neither Plaintiff's Racial Discrimination nor Retaliation Claims Reasonably Relate to her EEOC Charge; Thus, she Failed to Exhaust her Administrative Remedies as to the Same

Requiring that the Plaintiff include specificity in her administrative charge is not just a technicality. *Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998). Courts "cannot permit a litigant to bypass the Title VII administrative process through liberal interpretation of [said] charge." *Id.* Although the Plaintiff cites a litany of cases, none of which are controlling, to support the proposition that her EEOC charge can be interpreted such that it included racial discrimination and retaliation claims, any such interpretation stretches credulity. First, a national origin discrimination claim is not reasonably related to a racial discrimination claim such that the latter can magically spring from the former. And second, the description the Plaintiff provided in the EEOC charge does not support any reasonable notice regarding any retaliation claim or what conduct purportedly constituted the retaliation.

Indeed, "the law recognizes that allegations of national origin discrimination are not so closely related to allegations of racial discrimination such that a conclusion about one could reasonably be expected to grow out of an investigation of the other." *Id.* (collecting cases). Under Title VI, race and national origin are ideologically distinct. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) ("'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came"). Allegations about national origin discrimination, therefore, may be unrelated to race and allegations about one do not necessarily provide notice about the other. *Sisay*, 34 F. Supp. 2d at 64; *see e.g. Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996) (stating

it would be improper for the Court to re-cast plaintiff's national origin discrimination claim as a race discrimination claim because national origin and race are ideologically distinct). In her response, Plaintiff claims that in her EEOC charge she "also expressly stated words that reasonably relate to a claim of racial discrimination. Subsequently, in her complaint she also alleged claims of racial discrimination..." *See* Pl.'s Resp., D.E. No. 26 at p. 9. Yet, Plaintiff fails to identify exactly which "words" in the charge relate to discrimination based on race. Even a cursory review of the EEOC charge, shows that the Plaintiff stated no words regarding race in any measure. Based on the above-cited precedent, the Plaintiff wholly failed to state anything remotely related to race. The Plaintiff has not administratively exhausted her racial discrimination claim; thus, it fails as a matter of law.

Moreover, "[r]etaliation is another type of discrimination under Title VII." *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 138 (D.D.C. 2004). And any individual act of retaliation that forms the basis of a claim is a discrete discriminatory act where each must be administratively exhausted. *Id.*; *accord Kidane v. Northwest Airlines, Inc.*, 41 F. Supp. 2d 12, 15-16 (D.D.C. 1999) (granting summary judgment where EEOC charge statement "I have been subjected to the harassment of my immediate supervisor" lacked sufficient detail to encompass a discriminatory demotion).

The Plaintiff's allegations regarding her retaliation are too muddled and vague to show that they have grown from anything other than thin air much less the EEOC charge. To begin, though the Plaintiff's EEOC charge states that she wrote a letter to human resources on May 26, 2005, (not May 28, 2005 as she alleged in her response brief), this allegation is wholly missing from her Second Amended Complaint. *Compare* Second Amended Compl., D.E. No. 6 *with* EEOC charge, D.E. No. 22-15. Further, given that the alleged letter's date is May 26, 2005—the

same day the Plaintiff was suspended with pay pending the investigation into her treatment

regarding Patient G., the letter cannot form the basis of any retaliation. That leaves the actions

and events which occurred in August 2005, *i.e.*, the purported denial of union representation and

escort from the Hospital as a possible basis for the purported retaliation. Yet, the EEOC charge

is completely devoid of any description of these events whatsoever despite the fact that the

Plaintiff filed the charge in and around the time of the events. Such haphazard and vague

pleadings cannot be characterized as reasonably relating to any retaliatory conduct and fail as a

matter of law to support a claim that the Plaintiff exhausted her administrative remedies.

## D. Plaintiff's Wrongful Termination Claim Cannot Change to Constructive Discharge to Defeat Summary Judgment; Even if it Could Summary Judgment is Still Appropriate

Apparently realizing that her wrongful termination claim fails as a matter of law because:

1) she resigned; and 2) the District of Columbia fails to recognize such a claim, *see* Def.'s Mot.

for Sum. J., D.E. No. 22 at pp. 35-36, the Plaintiff attempts to change this claim into a

constructive discharge claim. The effort comes too little, too late. The time for amending the

pleadings has long since past. As a result, Plaintiff essentially concedes that her wrongful

termination claim must be dismissed. But even assuming *arguendo* that the claim could be

added, the record evidence is woefully deficient and cannot support any cognizable claim.

Under the Federal Rules of Civil Procedure, once the Hospital answered the Second

Amended Complaint, the Plaintiff could amend her claims only with the Hospital's consent or

leave of this Court. *See* Fed.R.Civ.P. 15(a)(2). She failed to seek consent or so move. The

Plaintiff cannot add a brand new claim of constructive discharge after the close of discovery and

in the midst of summary judgment briefing. *See United States Information Agency v. Krc*, C.A.

87-1744 (CRR), 1991 U.S. Dist. LEXIS 11447, 13-14 (D.D.C. Aug. 12, 1991) (denying

plaintiff's motion to amend his second amended complaint to add a libel claim first raised in a

summary judgment submission, and noting that to rule otherwise "at this late date would in effect encourage sandbagging"). As the Plaintiff has not sought leave of this Court properly to amend her Complaint to add this new claim, she cannot do so now at this late date.

But even if Plaintiff had properly amended the Complaint to include a constructive discharge claim, there is no evidence in the record to support such a claim. To establish a prima facie case of constructive discharge, a plaintiff must show: 1) intentional discrimination; 2) the employer deliberately made working conditions intolerable; and 3) aggravating factors such that the plaintiff's only option was to resign. *Sisay*, 34 F. Supp. 2d at 66. At bottom, the plaintiff must prove that the employer deliberately made working conditions so intolerable that any reasonable person would have been driven to quit. *Id.* If the plaintiff fails to present evidence as to any one of these elements, the constructive discharge claim must fail as a matter of law. *Crenshaw*, 23 F. Supp. 2d at 19.

For the same reasons stated in the Hospital's opening brief and those contained herein, regarding Plaintiff's discrimination and retaliation claims, any constructive discharge claim must also fail as a matter of law. There is simply no evidence of intentional discrimination in this case, so the first element of a constructive discharge claim cannot be satisfied. This court need go no further. But assuming momentarily for the sake of argument that discrimination has been proved, absolutely no record proof exists to support either the second or third elements of the claim.

In support of the second element (*i.e.,* the employer deliberately made work conditions intolerable) the Plaintiff, for the first time in opposition to summary judgment, alleges in her brief that both her insubordinate refusal to meet with her supervisor to receive her annual evaluation and her escort off the Hospital's premises thereafter were "done to demean her and …

to make her work environment intolerable." *See* Pl.'s Resp., D.E. No. 26 at p. 12. These allegations cannot remotely support, much less prove, the second element.

Initially, there is nothing so unbearably intolerable about these actions that they would drive a reasonable person to quit. More importantly, however, the Plaintiff cites no evidence in the record to support the bald accusations. They are pure speculation "cut from whole cloth." And above all, record evidence presented to date dispels them. Plaintiff alleges she was denied union representation, but again the Plaintiff under oath testified she met with her union representative on several occasions and that based on her union representative's advice, she refused to take the meeting. *See* Pl.'s Depo. Tr. at 61:1 – 62:21 attached hereto as Exh. B. And Hospital documents corroborate this. *See* Exhs. 23 and 32, D.E. No. 22-24 and 22-33. In Exhibit 23, the Plaintiff's supervisor requested a meeting with her and her union delegate. *See id.* Likewise, Exhibit 32 states that the Plaintiff's supervisor "wished to meet with you in the presence of your union delegate … you did not report to my office … [and] your union delegate … stated that you were not going to meet with me." *See id.* Thereafter, the Plaintiff requested, received and took FMLA leave. *See* Def.'s Mot. for Sum. J., D.E. No. 22 at pp. 9-12. While out on said leave she found another job and quit the Hospital. *Id.* Given these facts, any cognizable constructive discharge claim fails as a matter of law and will not defeat summary judgment as to the wrongful termination claim. For the reasons stated in the Hospital's motion and this reply, summary judgment should be granted on the wrongful termination claim.

As for the third element of a constructive discharge claim (*i.e.,* aggravating factors) the Plaintiff categorically fails to even allege any aggravating factors in her response brief much less provide any record evidence that they actually exist. The Plaintiff's total failure in this regard is fatal to the her claim.

**E. Plaintiff Offers no Facts that Defeat Summary Judgment Against her Intentional Infliction of Emotional Distress Claim**

In response to the Hospital's motion, the Plaintiff proffers no new evidence to support her claim for intentional infliction of emotional distress. Instead, she only repeats the legal standard and the regurgitates the complaint's allegations. The Hospital, therefore, incorporates its prior legal arguments for summary judgment and only emphasizes that in the employment context District of Columbia courts "'traditionally have been demanding in the proof required to support'" this claim. *Washington v. Thurgood Marshall Acad.*, 2006 U.S. Dist. LEXIS 40318 at *1, 49-50 (D.D.C. 2006) (citing cases); *see e.g., Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21, 28 (D.D.C. 2002) *quoting Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 38 (D.D.C. 2001) (proof required to support intentional infliction of emotional distress in the employment context "is particularly demanding").

And employer-employee conflicts typically fail to show outrageous conduct that "goes beyond all possible bounds of decency such that it is atrocious and utterly intolerable in a civilized society." *Tiefenbacher v. AARP*, C.A. 05-1802 (CKK), 2006 U.S. Dist. LEXIS 23629, 11-12 (D.D.C. Apr. 27, 2006) (holding that the defendant's alleged "demeaning and humiliating" behavior, "vulgar expletives" and "browbeating tactics" which berated and belittled plaintiff, and caused plaintiff to feel "humiliated, shocked, physically shaken and distraught" might have been rude, callous, and insensitive but were not extreme and outrageous conduct); *see e.g., Crowley v. North Am. Telcoms. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997) (upholding dismissal where employee alleged that he "was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge").

Measured against this standard, the solitary fact on which the Plaintiff relies to prove extreme and outrageous conduct fails as a matter of law. This fact, which Plaintiff proffers to

prove extreme and outrageous conduct, is that she was "forcefully" escorted from the Hospital in front of her peers. *See* Pl.'s Resp. D.E. No. 26 at p. 15. This fact, however, pales in comparison to those that this Court has previously rejected as insufficient. *See Tiefenbacher*, 2006 U.S. Dist. LEXIS 23629 at 11-12; *see also Crowley*, 691 A.2d at 1172. The record shows that the Plaintiff acted flagrantly insubordinate when she refused to meet with her supervisor to receive her annual evaluation. *See* Def.'s Mot. for Sum. J., D.E. No. 22 at pp. 38-39. The record also shows that the Plaintiff was escorted from the premises due to her insubordination. *See id.* The record even shows that the Plaintiff agreed, the actions on which she based her claim "all occurred in the context of her employment relationship." *See id.* The record, therefore, proves nothing more than a classic example of an employer-employee dispute that fails, as a matter of law, to rise to the level of extreme and outrageous conduct needed to prove this tort.

## III.

## <u>CONCLUSION</u>

Based on the undisputed evidentiary record, the foregoing arguments in this reply and the opening brief, the Defendant, Georgetown University Hospital respectfully requests that this Court grant its Motion for Summary Judgment and dismiss the Plaintiff's Second Amended Complaint with prejudice in its entirety.

Dated: May 15, 2008                    Respectfully submitted,


                                       _____/s/_____
                                       Keith J. Harrison, Esq.
                                       Crowell & Moring LLP
                                       1001 Pennsylvania Avenue, N.W.
                                       Washington, D.C.  20004-2595
                                       (202) 624-2500
                                       (202) 628-5116 (facsimile)

                                       *For Defendant, Georgetown University Hospital*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May 2008, a copy of the foregoing document,

*DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT* was served by electronic

mail service and first class mail, postage prepaid, upon the following individual:

Reuben B. Collins, II (Bar No. 14561)
Collins & Talley LLC
201 Centennial Street, A-2
P.O. Box 1857
La Plata, Maryland 20646
Ph: (301) 934-4366
Fax: (301) 934-1668

Counsel for Plaintiff
*Bonita M. Brown*


_____/s/ Leslie J. Gogan_____
Leslie J. Gogan

# EXHIBIT A

COPY

1

1      IN THE UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF COLUMBIA

3

4   BONITA M. BROWN,                    )

5            Plaintiff,      )

6        vs.                   )  Case No.

7   GEORGETOWN UNIVERSITY          )  1:06CV01417

8   HOSPITAL,                          )

9            Defendant.     )

10

11

12        —    —    —    —    —

13

14      The deposition of **MICHELLE YVONNE**

15   **HUMPHREY** was taken on Thursday, October 25,

16   2007, commencing at 1:37 p.m., at the offices of

17   Collins & Talley, LLC, 201 Centennial Avenue,

18   Suite A-2, LaPlata, Maryland, before Sally Jo

19   Bowling, Notary Public.

20        —    —    —    —    —

21

22

2

```
 1                    A P P E A R A N C E S

 2

 3    ON BEHALF OF THE PLAINTIFF:

 4          REUBEN B. COLLINS, II, ESQ.

 5          Collins & Talley LLC

 6          201 Centennial Street, A-2

 7          Post Office Box 1857

 8          LaPlata, Maryland  20646

 9          (301) 934-4366

10          rcollins@dcmdlawyers.com

11

12    ON BEHALF OF THE DEFENDANT:

13          LESLIE J. GOGAN, ESQ.

14          TRINA L. FAIRLEY, ESQ.

15          Crowell & Moring

16          1001 Pennsylvania Avenue, N.W.

17          Washington, D.C.  20004-2595

18          (202) 624-2830

19          tfairley@crowell.com

20

21    ALSO PRESENT:

22          Bonita M. Brown
```

3

1                    **P R O C E E D I N G S**

2                      -    -    -    -    -

3       Whereupon--

4                      **MICHELLE YVONNE HUMPHREY**

5       a witness, called for examination, having been

6       first duly sworn, was examined and testified as

7       follows:

8                          **EXAMINATION**

9                      BY MR. COLLINS:

10          Q.    Good morning, how are you?

11          A.    Afternoon.

12          Q.    Good afternoon, how are you?

13          A.    I'm good, thank you.

14          Q.    My name is Reuben Collins, I'm the

15       attorney representing Bonita Brown.  I guess as

16       a preliminary matter, have you ever been a part

17       of a deposition before?

18          A.    No.

19          Q.    A deposition is a legal representation.

20       It is required that to the best of your ability

21       you respond to the questions as best you can.

22       If I ask you a question and you don't understand

20

Humphrey

1       A.    There was a -- it was a unit-based

2   initiative when I worked on just -- as the ANC

3   on C41 where we had a clin tech of the year

4   award, and there was an occasion where she

5   actually won an award.

6       Q.    I'm going to enter as an exhibit

7   Exhibit 1, a copy of the clinical technician of

8   the year award.

9           **(Plaintiff's Deposition Exhibit Number**

10  **1 was marked for identification.)**

11          BY MR. COLLINS:

12      Q.    How was an employee able to receive an

13  award, a technician able to receive an award

14  like this, or what are the requirements to

15  receive this award?

16      A.    Normally, the staff nominate, the staff

17  nominate a clin tech.

18      Q.    And were you part of the nomination, in

19  any capacity?

20      A.    I was the person who collected the

21  ballots.

22      Q.    And when were the ballots collected?

Humphrey

1    A.    The ballots -- well --

2    Q.    During the course -- within that time

3  period?

4    A.    I don't know exactly, but there was --

5  the problem -- what happened was, somebody else

6  had won the award, but he had won it for the

7  second year and when we asked him about, you

8  know, that he had won the award, he said he

9  didn't want it, he would rather it go to

10  somebody else.

11        So, we went to the person who got the

12  next best score, if you like, and that was

13  Bonita Brown, and so I don't know the exact time

14  frame in which she got this award, from when she

15  was nominated. I don't know.

16    Q.    So, at what point, I guess in terms of

17  time frame, estimate of time, because it says

18  that this was for clinical technician of the

19  year in 2004, is this an annual award?

20    A.    Yes.

21    Q.    When during your name with Georgetown

22  was this award -- when was the ballot -- when

Humphrey

1    did the ballot period occur and at what point

2    did the actual recipient receive the award?

3         A.    I have no idea.    It was something we

4    set up in-house.    It wasn't a Georgetown thing,

5    it was something that our two units did.    It was

6    roundabout nurse of the week -- the nurse of the

7    week -- when nurses week was in was the time

8    that we did this.    So, whenever that fell in

9    that year was the time that we issued these.

10        Q.    But this was a regular event that

11   occurred like --

12        A.    We did it twice.

13        Q.    Okay.    So, twice during your time?

14        A.    Correct.

15        Q.    So, that was in '04 and '05?

16        A.    '03.

17        Q.    '03 and '04?

18        A.    Yes.

19        Q.    Now, you're saying with the year that

20   Ms. Brown received the award, she was the second

21   choice, is that what you are saying?

22        A.    Correct.

# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

BONITA M. BROWN,                    *

          Plaintiff,                *

                                    *

     vs.                            *    CASE NO.:

                                    *    1:06-CV-01417 (RWR)

GEORGETOWN UNIVERSITY               *

HOSPITAL,                           *

          Defendant.                *

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

          The deposition of BONITA M. BROWN was

taken on Monday, August 13, 2007, commencing at

10:05 a.m., at the offices of CROWELL & MORING,

LLP., 1001 Pennsylvania Avenue, N.W., Suite 1100,

Washington, D.C., before Cheryl A. Lord, Notary

Public.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


Reported by:

          Cheryl A. Lord, RPR, CRR

**ORIGINAL**

Page 61

1  her, what is this about, and she said, I'm not

2  going to tell you.

3          I said, well, I'm not coming.  I said,

4  can you tell me what this meeting is about.  She

5  said, I'm got going to tell you.  I said, I'm not

6  coming.

7          For the last time I asked her, Michelle,

8  what is this about, I'm in the middle of doing

9  patient care.  She said, I'm not going to tell you.

10 She said, are you being insubordinate.

11         I said, well, yes, if you want to put it

12 that way.  She said, okay.  She hung the phone up.

13    Q.   So this is a telephone conversation?

14    A.   Yes.

15    Q.   Did Ms. Humphrey indicate to you that

16 that was not going to be a disciplinary action and

17 therefore you did not need a union representative?

18    A.   No.

19         She denied me a union rep.

20    Q.   She denied you a union rep?

21    A.   Yes.

Page 62

1    Q.    How did she deny you a union rep?

2    A.    She said I didn't need a union rep.

3    Q.    Okay.  Now, as of August 17th, had you

4    met with Ms. Humphrey to review your performance

5    evaluation?

6    A.    No.

7    Q.    Do you need a union rep present during

8    the performance evaluation review with your

9    supervisor?

10    A.    Under the circumstances, I was informed

11    by SEIU not to meet with Ms. Humphrey under no

12    circumstances unless a union rep was present.

13    Q.    Okay.  By this time, had Mr. Lawson lost

14    his position as a union rep shop steward?

15    A.    Yes, sir.

16    Q.    And who was the union rep who was

17    advising you at this time?

18    A.    Ricky Newsome.

19    Q.    And how would you describe your

20    relationship with Mr. Newsome?

21    A.    Coworkers.