UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
BONITA M. BROWN,               )
                               )
        Plaintiff,             )
                               )
        v.                     )    Civil Action No. 06-1417 (RWR)
                               )
                               )
GEORGETOWN UNIV. HOSP.         )
MEDSTAR HEALTH,                )
                               )
        Defendant.             )
_____)
```

MEMORANDUM OPINION

Plaintiff Bonita Brown brings this action alleging retaliation and discrimination on the basis of race or national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and Article 49B of the Maryland Annotated Code, wrongful termination, breach of contract, and intentional infliction of emotional distress ("IIED"). The defendant, Georgetown University Hospital Medstar Health ("Hospital"), has moved for summary judgment. Because Brown has failed to exhaust her administrative remedies as to her retaliation claim, the Hospital took no adverse employment action against her, and the employment dispute took place in the District of Columbia, the Hospital's motion for summary judgment will be granted with respect to Brown's Title VII and Maryland law claims. In addition, summary judgment for the Hospital will be granted on Brown's wrongful termination claim because Brown

resigned, on Brown's breach of contract claim because Brown did not follow her collective bargaining agreement ("CBA") grievance procedures, and on the IIED claim because Brown has failed to demonstrate that the Hospital's conduct was extreme and outrageous.

BACKGROUND

For approximately two and one-half years, Brown was an at-will employee for the Hospital and a member of the District 1199E-DC, Health Care Workers Union SEIU ("SEIU"). (Pl.'s Second Am. Compl. ("Compl.") ¶ 5; Def.'s Stmt. of Material Facts ("Def.'s Stmt.") ¶¶ 2, 4.)[1] During the course of Brown's employment, the Hospital changed Brown's work schedule by one and one-half hours due to patient needs. (Compl. ¶¶ 10-11, 13; Def.'s Stmt. ¶ 10.)  Brown also was suspended with pay for several days for refusing to respond to a patient's needs and was escorted off hospital premises for refusing to meet with her supervisor, Michelle Humphrey. (Def.'s Stmt. ¶¶ 13-18, 21-22, 24-25; Compl. ¶¶ 21, 24.)

In mid-August 2005, Brown took sick leave from work and then was granted leave under the Family Medical Leave Act ("FMLA") from August 22 through October 31, 2005. (Def.'s Stmt. ¶ 27;

_____

[1]     While Brown has claimed she was employed for four years (see Compl. ¶ 6; Def. Georgetown Univ. Hospital's Mot. for Summ. J. ("Def.'s Mot."), Ex. 15), she does not contest the Hospital's statement that Brown was employed from March 2003 until November 2005. (Def.'s Stmt. ¶ 2.)

Def. Georgetown Univ. Hospital's Mot. for Summ. J. ("Def.'s
Mot."), Ex. 29.) During Brown's absence, the Hospital removed
Brown from the schedule pending Brown's completion of her annual
performance evaluation. (Def.'s Stmt. ¶ 25; Compl. ¶ 28.)
However, Brown never returned to work because, after extending
her FMLA leave through mid-November, Brown resigned on
November 14, 2005. (Compl. ¶ 31; Def.'s Mot., Ex. 31.)

After filing an Equal Employment Opportunity Commission
("EEOC") complaint alleging discrimination on the basis of
national origin, Brown brings this suit alleging retaliation and
discrimination under Title VII and Maryland law on the basis of
race or national origin, wrongful termination, breach of
contract, and IIED. (Compl. ¶ 3; Def.'s Stmt. ¶ 34-35; Def.'s
Mot., Ex. 15.) The defendant has moved for summary judgment
arguing, in part, that Brown has failed to exhaust her
administrative remedies for her discrimination claims, and that,
even if Brown has exhausted her administrative remedies, Brown
has failed to allege that she suffered from any adverse
employment action. The Hospital further argues that Maryland law
does not apply, that the wrongful termination claim fails because
Brown resigned, that the breach of contract claim fails because
Brown did not follow her CBA grievance procedures, and that there
was no outrageous conduct to substantiate Brown's IIED claim.

## DISCUSSION

To succeed on a motion for summary judgment, the movant must show that, when the facts are viewed in the light most favorable to the non-movant, there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Moreover, to prevail on a summary judgment motion, the moving party must demonstrate that the non-moving party failed to show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. A party can "defeat summary judgment through factual representations made in a sworn affidavit if [she] supports [her] allegations . . . with facts in the record, . . . or provides direct testimonial evidence." <u>Baloch v. Norton</u>, 517 F. Supp. 2d 345, 353 (D.D.C. 2007) (internal quotation marks and citations omitted). Ultimately, "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth

at trial." <u>Moore v. Hartman</u>, 571 F.3d 62, 66 (D.C. Cir. 2009)
(alteration in original).

I.   TITLE VII

     A.   <u>Administrative remedies</u>

     "[A] timely administrative charge is a prerequisite to
initiation of a Title VII action in the District Court."
<u>Hutchinson v. Holder</u>, 668 F. Supp. 2d 201, 212 (D.D.C. 2009)
(alteration in original).  This is a mandatory requirement
"because the administrative charge gives the charged party notice
of the claim and it 'narrow[s] the issues for prompt adjudication
and decision.'"  <u>Caldwell v. ServiceMaster Corp.</u>, 966 F. Supp.
33, 48 (D.D.C. 1997) (alteration in original) (quoting <u>Park v.
Howard Univ.</u> 71 F.3d 904, 907 (D.C. Cir. 1995)).  Although a
"vaguely worded [administrative] charge is not fatal to a Title
VII plaintiff['s] case" because charges "are often drafted by
persons unschooled in technical pleading[,] . . . the requirement
of some specificity in a charge is not a mere technicality, . . .
and a liberal interpretation of an administrative charge cannot
be used to permit a litigant to bypass the Title VII
administrative process."  <u>Id.</u> at 49 (internal quotation marks and
citations omitted).  Moreover, "the Supreme Court's decision in
<u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002),
established that 'each discrete adverse employment action
individually triggers Title VII's procedural requirements,' such
that a plaintiff alleging more than one discrete discriminatory

action 'must exhaust the administrative process [with respect to each allegedly discriminatory action] regardless of any relationship that may exist between those discrete claims and any others.'" <u>Porter v. Jackson</u>, 668 F. Supp. 222, 229 (D.D.C. 2009) (alterations in original) (quoting <u>Coleman-Adebayo v. Leavitt</u>, 326 F. Supp. 2d 132, 137-38 (D.D.C. 2004)).

Brown has asserted discrimination and retaliation claims under Title VII.[2] It is undisputed that national origin was a basis of Brown's EEOC charge. (<u>See</u> Pl.'s Opp'n at 11; Def.'s Mot., Ex. 15, EEOC Form.) The Hospital, however, argues that summary judgment should be granted with respect to Brown's added claims of racial discrimination and retaliation because the EEOC complaint makes no reference to race or retaliation. (Def.'s Mot. at 17.) Contrary to the defendant's assertions, however, the plaintiff's EEOC complaint raises as an issue racial discrimination. For example, Brown wrote "African American" next to "National Origin" in the space where the complainant is to

_____

[2] Brown also has asserted a discrimination claim under Article 49B of the Maryland Annotated Code, arguing that there is supplemental jurisdiction over the state claim. (Compl. at 5-6; Pl.'s Mem. of P. & A. in Supp. of Pl.'s Response to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 7.) However, Article 49B provides only "for a private right of action in limited circumstances, where discrimination occurs within certain counties in Maryland[.]" <u>Hopes v. Roche</u>, Civil Action No. RBD-04-2963, 2005 WL 1812820, at *8 n.5 (D. Md. Aug. 2, 2005), and the latest amended complaint states clearly that "the employment practices at issue here were committed within the jurisdiction of the District of Columbia." (Compl. ¶ 1.) The defendant's motion for summary judgment, therefore, will be granted on the plaintiff's Article 49B discrimination claim.

provide the basis for her charge.  (Def.'s Mot., Ex. 15, EEOC
Charge of Discrimination.)  Brown also wrote that she felt
insulted "as an African-American" when Humphrey stated "[i]t's a
cultural thing" during a meeting organized to raise employee
awareness of cultural differences.  (Id.; Def.'s Stmt. ¶ 11.)
Even though one court observed that "allegations of national
origin discrimination are not so closely related to allegations
of racial discrimination such that a conclusion about one could
reasonably be expected to grow out of an investigation of the
other[,]" Sisay v. Greyhound Lines, Inc., 34 F. Supp. 2d 59, 64
(D.D.C. 1998), Brown's EEOC complaint includes sufficient facts
to reasonably trigger an administrative investigation into racial
discrimination.

On the other hand, Brown's EEOC complaint makes no reference
to retaliation.  While the EEOC complaint alleges that Humphrey
harassed Brown throughout her years of employment, "especially
during the last six months" and that Brown "wrote a lengthy
letter to the human resource office detailing the problems [she
had] encountered" (Pl.'s Mem. at 11; Def.'s Mot., Ex. 15),
nowhere on the complaint does the word retaliation appear.  Nor
is there any reference to specific events occurring after Brown's
letter to human resources that would put the defendant on notice
of any retaliation claim.  Given that the exhaustion requirement
intends to give the agency an opportunity to handle claims
"internally and ensures that only claims plaintiff has diligently

pursued will survive," <u>Romero-Ostolaza v. Ridge</u>, 370 F. Supp. 2d 139, 149 (D.D.C. 2005), the Hospital's motion for summary judgment will be granted with respect to Brown's retaliation claim.

B.  <u>Adverse employment action</u>

Under Title VII, "it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." <u>Duniya v. Rice</u>, Civil Action No. 04-0851 (GK), 2007 WL 1549074, at *3 (D.D.C. May 25, 2007) (quoting 42 U.S.C. § 2000e-2(a)(1)).  In the absence of direct evidence of discrimination, a plaintiff claiming disparate treatment employment discrimination under Title VII must establish: "(1) she is a member of a protected class[3]; (2) she suffered an

_____

[3] The defendant's claim that plaintiff, as an American, is not a member of a protected class (Def.'s Mot. at 20) is without merit.  It is undisputed that Brown is African-American, and, as such, Brown is a member of a protected class.  <u>See</u> <u>Brownfield v. Bair</u>, 541 F. Supp. 22 35, 41 (D.D.C. 2008).  National origin has been defined as "the country where a person was born, or, more broadly, the country from which his or her ancestors came." <u>Espinoza v. Farah Mfg. Co., Inc.</u> 414 U.S. 86, 88 (1973).  Here, of course, Brown's ancestral reference is a continent, not a country.  But because Brown is African-American, she not only can support her race claim, but also can support her national origin claim.  Several courts have accepted without question a plaintiff's Title VII national origin discrimination claim where the plaintiff was African-American.  <u>See</u>, <u>e.g.</u>, <u>Vines v. Gates</u>, 577 F. Supp. 2d 242, 245 (D.D.C. 2008); <u>Waldo v. N.Y. City Health and Hospitals Corp.</u>, No. 06-CV-2614, 2009 WL 2777003, at *9

adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." <u>Id.</u> at *4.

The D.C. Circuit defines adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." <u>Taylor v. Small</u>, 350 F.3d 1286, 1293 (D.C. Cir. 2003). Courts focus on "ultimate employment decisions such as hiring, granting leave, promoting and compensating employees in this context and adverse employment actions do not include purely subjective injuries, such as dissatisfaction with reassignment, public humiliation, or loss of reputation." <u>Williams v. Tapella</u>, 658 F. Supp. 2d 204, 211 (D.D.C. 2009).

Brown claims that she suffered adverse employment actions when the Hospital changed her schedule, suspended her with pay, escorted her off the premises, and temporarily removed her from the schedule. (Compl. ¶¶ 10, 19-20, 24-25, 28.) None of these alleged actions, however, amounts to an adverse employment action. A scheduling dispute, without evidence of a material change in responsibilities or employment status, is not an adverse employment action. <u>Blake v. Potter</u>, 247 Fed. App'x 673, 675 (6th Cir. 2007) (stating that denying an employee's schedule

(E.D.N.Y. Aug. 31, 2009); <u>Brown v. Ill. Dep't of Natural Res.</u>, No. 07 C 2808, 2009 WL 1393298, at *1 (N.D. Ill. May 15, 2009); <u>Turner v. St. Luke's Episcopal Health System</u>, Civil Action No. H-06-1668, 2008 WL 706709, at *7 (S.D. Tex. 2008).

change request does not constitute an adverse employment action
where it does not result in a less distinguished title, a
material loss of benefits, or significantly diminished material
responsibilities); <u>Jackson v. Acedo</u>, Civil Action No. 08-1941
(RBW), 2009 WL 2619446, at *5 (D.D.C. Aug. 26, 2009) (noting that
denying a plaintiff's request for a schedule change does not
constitute a tangible change in duties or working conditions, or
a material employment disadvantage).  The Hospital gave Brown
over four weeks notice of the schedule change (Def.'s Mot., Ex.
14), and the modification represented only a one and one-half
hour change from the plaintiff's previous schedule.  (Def.'s Mot.
at 24.)  Moreover, the plaintiff makes no showing that the
revised schedule resulted in a change of employment status or
work-related duties.  (<u>See</u> <u>id.</u> at 23.)  The mere fact that Brown
might have preferred to keep her previous work schedule or that
the change might have inconvenienced Brown is not sufficient to
make out an adverse employment action.  <u>See</u> <u>Brown v. Brody</u>, 199
F.3d 446, 457 (D.C. Cir. 1999) ("Mere idiosyncrasies of personal
preference are not sufficient to state an injury"), <u>abrogated on
other grounds by</u> <u>Steele v. Schafer</u>, 535 F.3d 689 (D.C. Cir.
2008).

Nor does Brown's suspension with pay constitute an adverse
employment action.  <u>See</u> <u>Roberson v. Snow</u>, 404 F. Supp. 2d 79, 93
(D.D.C. 2005) (collecting cases); <u>Boykin v. England</u>, Civil Action
No. 02-950 (JDB), 2003 WL 21788953, at *4 n.5 (D.D.C. July 16,

2003) (noting that "an employee's placement on paid administrative leave for a limited period does not constitute an adverse employment action"); <u>Dickerson v. SecTeck, Inc.</u>, 238 F. Supp. 2d 66, 79 (D.D.C. 2002) (stating that "when an employee is placed on administrative leave or suspended pending an internal investigation, that decision does not constitute adverse employment action, at least when the suspension is relatively brief"); <u>see also</u> <u>Peltier v. United States</u>, 388 F.3d 984, 988 (6th Cir. 2004) (holding that "suspension *with* pay and full benefits pending a timely investigation into a suspected wrongdoing is not an adverse employment action") (emphasis in original); <u>cf.</u> <u>Greer v. Paulson</u>, 505 F.3d 1306, 1318 (D.C. Cir. 2007) (noting that the Supreme Court "recently observed . . . [that] a suspension <u>without pay</u>, even where the employer later provided back pay, could be a 'serious hardship' to a reasonable employee, and thus 'materially adverse'") (emphasis added); <u>Banks v. District of Columbia</u>, 498 F. Supp. 2d 228, 233 (D.D.C. 2007) (finding that a "nine day suspension <u>without pay</u> can certainly be described as an adverse employment action" (emphasis added)).

Brown was "suspended with pay pending investigation from May 26th, 2005 to June 6th, 2005 for gross misconduct" after she became argumentative with a patient's relatives and "refused to get another member of [the] staff to replace" her at the patient's request. (Def.'s Mot., Ex. 19.) Brown's behavior was

deemed a "blatant disregard" of the Hospital's Code of Conduct and Disciplinary Actions and Dismissals' policy. (Id.) The suspension was brief, Brown received full pay and benefits, and she did not suffer a change in employment status or economic harm. The suspension, therefore, did not constitute an adverse employment action.

The same conclusion follows from Brown having been removed from the schedule. The removal did not change Brown's employment status and was temporary only. In fact, the removal was wholly dependant on Brown fulfilling her obligation to meet with Humphrey to discuss her performance evaluation. Moreover, the removal was implemented during a period in which Brown was not reporting to work due to sickness (Def.'s Mot. at 25; Pl.'s Compl. ¶¶ 25-28) and had no substantive effect on Brown's duties or responsibilities.

Finally, escorting Brown off hospital premises does not amount to an adverse employment action. "Actions short of an outright firing can be adverse within the meaning of Title VII, but not all lesser actions by employers count." Forkkio v. Powell, 306 F.3d 1127, 1130 (D.C. Cir. 2002). While the Hospital's action may have embarrassed Brown, such subjective injury is not an adverse action for the purposes of Title VII. Because Brown has failed to allege any adverse employment action, the defendant's motion for summary judgment will be granted on Brown's Title VII discrimination claim.

II.  WRONGFUL TERMINATION

     Brown alleges that her "termination was wrongful and without
any cause[] whatsoever[.]"  (Compl. ¶ 41.)  It is undisputed,
however, that the plaintiff was not terminated; rather, she
resigned.  (Def.'s Mot., Ex. 31.)  Even if the Hospital had
terminated Brown's employment, it would have been well within its
rights to do so.  "[T]he District of Columbia does not recognize
wrongful discharge claims for an at-will employee."  Frazier v.
Univ. of D.C., 742 F. Supp. 28, 29 (D.D.C. 1990).  "Termination
of employment does not breach an at-will employment contract
because by its very terms the agreement contemplates that either
party may end the employment relationship without cause."  Ames
v. HSBC Bank USA, N.A., Civil Action No. 06-2039 (RMC), 2007 WL
1404443, at *2 (D.D.C. May 11, 2007).

     Brown, however, in her response to the Hospital's summary
judgment motion, now argues that her "claim rises to the level of
'constructive discharge.'"  (Pl.'s Resp. at 12.)  "An actionable
constructive discharge claim requires a showing that
(1) intentional discrimination existed, (2) the employer
deliberately made working conditions intolerable and
(3) aggravating factors justified the plaintiff's conclusion that
she had no option but to end her employment."  Turner v. District
of Columbia, 383 F. Supp. 2d 157, 171 (D.D.C. 2005) (citing
Carter v. George Washington Univ., 180 F. Supp. 2d 97, 110
(D.D.C. 2001)).  In the D.C. Circuit, "a 'finding of constructive

discharge depends on whether the employer deliberately made
working conditions intolerable and drove the employee' out."
Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1558 (D.C. Cir.
1997) (quoting Clark v. Marsh, 665 F.2d 1168, 1173 (D.C. Cir.
1981)).  The test is objective and "federal courts have
established a relatively high threshold for what a reasonable
employee would tolerate."  Kalinoski v. Gutierrez, 435 F. Supp.
2d 55, 78 (D.D.C. 2006).

The only facts that Brown alleges in support of her
constructive discharge claim are that her annual evaluation never
occurred and that she was escorted off hospital premises.  (Pl.'s
Reply at 12-13.)  However, the Hospital has shown that Humphrey
tried to schedule Brown's annual evaluation (Def.'s Mot., Ex. 28)
and that Brown was escorted off hospital premises after refusing
to report to Humphrey's office.  (Def.'s Stmt. ¶ 25.)  Moreover,
the plaintiff has not shown that her work conditions were so
intolerable that she was driven out.  See, e.g., Kalinoski, 435
F. Supp. 2d at 78 (granting defendant summary judgment on the
plaintiff's constructive discharge claim where the plaintiff's
only evidence was that she was denied requests for accrued
medical leave and placed on leave without pay); cf. Hunt v. City
of Markham, Ill., 219 F.3d 649, 655 (7th Cir. 2000) ("A person
who is told repeatedly that he is not wanted, has no future, and
can't count on ever getting another raise would not be acting
unreasonably if he decided that to remain with this employer

would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable.") Also, the defendant makes no showing of intentional discrimination. See Sewell v. Chao, 532 F. Supp 2d 126, 144 (D.D.C. 2008) (noting that because plaintiff could not satisfy her age discrimination or hostile work environment claim, summary judgment also must be granted to the defendant on a constructive discharge claim); cf. Harris v. Wackenhut Servs., Inc., 590 F. Supp. 2d 54 (D.D.C. 2008) (noting that the Court presumes that the plaintiff has satisfied the intentional discrimination prong of a constructive discharge claim after having previously decided that an issue of material fact exists as to the plaintiff's race discrimination claim). Without more, the plaintiff's belated claim for constructive discharge cannot survive the defendant's summary judgment motion.

III. BREACH OF CONTRACT

Brown alleges that the Hospital breached the CBA between it and the SEIU by refusing "to allow her to meet with management with her union representati[ve]" and terminating her without cause. (Compl. ¶ 45; Pl.'s Reply at 13.) In response, the Hospital argues that Brown failed to exhaust her administrative remedies by failing to "proceed through the grievance procedures established by [the] agreement." (Def.'s Mot. at 37.)

"[P]arties to a collective bargaining agreement normally must seek to resolve their contract disputes under agreed-upon grievance and arbitration procedures[.]" Noble v. U.S. Postal Serv., 537 F. Supp. 2d 210, 219 (D.D.C. 2008) (internal citation omitted); see also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). "The general rule in this circuit is that the exhaustion requirement 'may be waived in only the most exceptional circumstances.'" Communic'ns Workers of Am. v. A.T. & T., 40 F.3d 426, 432 (D.C. Cir. 1994) (quoting Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs, 714 F.2d 163, 168-69 (D.C. Cir. 1983)). "[E]xhaustion can be excused 'on grounds of futility only when resort to administrative remedies is clearly useless.'" Noble, 537 F. Supp. 2d at 219 (quoting Ass'n of Flight Attendants - CWA, AFL-CIO v. Chao, 493 F.3d 155, 159 (D.C. Cir. 2007)).

When a provision of the CBA at issue here is breached, an aggrieved employee must follow a two-step process. First, the employee must present her "grievance orally to [her] immediate supervisor" within 21 days of the occurrence of the event. (Def.'s Mot., Ex. 2, Art. 22.) If the grievance is not resolved at Step 1, the employee may proceed to Step 2 within 21 days of the employer's response to the employee's oral grievance. There, a union representative or aggrieved employee must present the grievance in writing to the Manager of Employee and Labor Relations, or the appropriate Vice President or designee. An

employer's failure to answer a grievance at any step is not deemed to be acquiescence and the union may proceed to the next step. (Id.)

Brown does not dispute that she should have followed the CBA's grievance procedures, but argues that she "diligently sought to follow the procedures . . . as best as she could despite efforts by [the Hospital] to thwart her attempts to meet with management while being represented by counsel." (Pl.'s Reply at 13.) Brown's argument is deficient in two primary ways. First, Brown provides no evidence that she was entitled to have union representation at her management meeting. While the CBA gives an employee the right to have a "union delegate present when being discharged or during the issuance of an official warning or suspension" (Def.'s Mot., Ex. 2., Art. 21, ¶ 1), Brown fails to state whether the meeting with management involved a warning, suspension, or discharge. Rather, the meeting appears to have been scheduled for a performance evaluation. Second, even if the Hospital had breached the CBA, Brown provides no evidence that she orally notified her supervisor of the grievance or that she proceeded to Step 2 and submitted any writing detailing the grievance in the absence of a response from her supervisor. Because Brown failed to exhaust her administrative remedies under the CBA, the Hospital's summary judgment motion will be granted as to Brown's breach of contract claim.

IV.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

IIED requires a showing of "(1) extreme and outrageous conduct [by the defendant] which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  Ben-Kotel v. Howard Univ., 156 F. Supp. 2d 8, 14 (D.D.C. 2001) (internal quotation marks omitted) (alterations in original).  It is not easy for a plaintiff to prove that she was subject to extreme and outrageous conduct.  Wanko v. Catholic Univ. of Am., Civil Action No. 08-2115, 2009 WL 3052477, at *5 (D.D.C. Sept. 22, 2009).  A defendant is liable "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

Brown alleges that the defendant forcibly escorted her off the premises and that she suffered "from a heart condition known as Angina" as a result.  (Id. ¶¶ 47-48.)  This alleged conduct, however, is neither extreme nor outrageous.  See, e.g., Tiefenbacher v. Am. Ass'n of Retired Persons, Civil Action No. 05-1802 (CKK), 2006 WL 1126841, at *4 (D.D.C. 2006) (dismissing IIED claim where defendant's alleged actions included "escorting [the plaintiff] from the building 'like a common criminal,'" making obscene, crude and sexually offensive statements, and terminating plaintiff).  While Brown's complaint alleges that she was "forcibly" escorted off the premises, she provides no facts

or evidence to substantiate her claim.  Also, the Hospital's
alleged conduct occurred in the context of an employment dispute.
"Courts are particularly demanding when intentional infliction of
emotional distress claims are made in an employment context."
Elhusseini v. Compass Group USA, Inc., 578 F. Supp. 2d 6, 23
(D.D.C. 2008).  "Employer-employee conflicts generally do not, as
a matter of law, rise to the level of outrageous conduct."  Id.
Moreover, courts have dismissed intentional infliction of
emotional distress claims under far more egregious circumstances.
See Crowley v. N. Am. Telecomm. Assoc., 691 A.2d 1169, 1172 (D.C.
1997) (dismissing claim where plaintiff allegedly was subjected
to contempt, scorn and other indignities by his supervisor, and
received an unwarranted evaluation and discharge); Kerrigan v.
Britches of Georgetowne, Inc., 705 A.2d 624, 628 (D.C. 1997)
(dismissing claim where the defendant allegedly targeted the
plaintiff for a sexual harassment lawsuit, manufactured evidence
against him, leaked to other employees information from the
investigation, and unjustifiably demoted him).  Here, the
Hospital's alleged conduct is not sufficient to constitute IIED
or withstand the defendant's summary judgment motion.

CONCLUSION

Because Brown has failed to exhaust her administrative
remedies as to her retaliation claim, the Hospital took no
adverse employment action against her, and none of the alleged
events took place in Maryland, the defendant's summary judgment

motion will be granted with respect to Brown's Title VII and Maryland law discrimination claims.  Furthermore, summary judgment will be granted on Brown's wrongful termination claim because Brown resigned, on Brown's breach of contract claim because Brown failed to follow her CBA grievance procedures, and on Brown's IIED claim because Brown has failed to demonstrate that the Hospital's conduct was outrageous and extreme.

A final, appealable Order accompanies this Memorandum Opinion.

SIGNED this 29th day of March, 2011.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge